1  James H. Hanson (Ind. Bar #08100-49)
   jhanson@scopelitis.com
2  SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
   10 West Market Street, Suite 1500
3  Indianapolis, Indiana 46204
   Tel: (317) 637-1777
4  Fax: (317) 687-2414

5  Kathleen C. Jeffries (SBN #110362)
   kjeffries@scopelitis.com
6  Christopher C. McNatt, Jr. (SBN #174559)
   cmcnatt@scopelitis.com
7  SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LLP
   2 North Lake Avenue, Suite 460
8  Pasadena, California 91101
   Tel:  (626) 795-4700
9  Fax: (626) 795-4790

10
   Adam C. Smedstad (ARDC No. is 6210102)
11 asmedstad@scopelitis.com
   SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
12 30 W. Monroe Street, Suite 600
   Chicago, IL 60603-2427
13 Tel:  (312) 255-7200
   Fax: (312) 255-7255
14
   Attorneys for Defendant,
15 C.R. ENGLAND, INC.

16              UNITED STATES DISTRICT COURT

17             CENTRAL DISTRICT OF CALIFORNIA

18 BARRETTE JASPER, on behalf of      )  CASE NO.  08-CV-05266 GW (CWx)
   himself and others similarly situated, )
19                                      )
                                        )
20         Plaintiffs,                  )  DEFENDANT'S OPPOSITION TO
                                        )  PLAINTIFF'S MOTION FOR CLASS
21                                      )  CERTIFICATION
         vs.                           )
22                                      )  Hearing Date:  March 26, 2009
                                        )  Time:          8:30 a.m.
23 C.R. ENGLAND, INC. and DOES          )  Place:         Courtroom 10
   1-100, INCLUSIVE,                    )
24                                      )
                                        )
25         Defendants.                  )
   _____     )
26 _____                              )

27

28
   _____
                         DEFENDANT'S OPPOSITION TO
              PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# **TABLE OF CONTENTS**

TABLE OF CONTENTS  ................................................................  i

TABLE OF AUTHORITIES  ........................................................  ii

I.      INTRODUCTION  .......................................................  1

II.     FACTS  ............................................................................  2

        A.      Meal And Rest Breaks  ..........................................  3

        B.      Wage Statements  ....................................................  5

        C.      Deductions From Wages  .......................................  6

III.    SUMMARY OF THE ARGUMENT  ...........................  7

IV.     ARGUMENT  ..................................................................  9

        A.      Rule 23 Standards For Class Certification  .........  9

        B.      Jasper Has Failed To Satisfy Standards For Rule 23(b)(2)
                Certification  .........................................................  12

        C.      Jasper Has Failed To Demonstrate That His Claims Are Typical Of
                The Class  ...............................................................  14

        D.      Jasper Has Not Demonstrated Predominance Or Superiority  .........  15

                1.      Meal And Rest Break Claims  ...................  15

                2.      Wage Statement Claims  .............................  19

                3.      Deduction Claims  .......................................  21

V.      CONCLUSION  .............................................................  22

i

1  **<u>TABLE OF AUTHORITIES</u>**

2

3  **<u>Cases</u>**

4  *Blackwell v. Skywest Airlines, Inc.,* 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) .... 18

5  *Brown v. Fed. Express Corp.*, 249 F.R.D. 580 (C.D. Cal. 2008) .............. 15, 18, 19

6  *Cicairos v. Superior Court,* 35 Cal. Rptr. 3d 243 (Cal. Ct. App. 2005) .............. 18

7  *City of Oakland v. Hassey,* 728 Cal. Rptr. 3d 621, 642 (Cal. Ct. App. 2008) ...... 21

8  *Clay v. American Tobacco, Co.,* 188 F.R.D. 483 (S.D. Ill. 1999) ....................... 10

9  *Dukes v. Wal-Mart, Inc.,* 509 F.3d 1168 (9th Cir. 2007) ...................................... 9

10 *Elliot v. Spherion Pac. Work, LLC,* 572 F. Supp.2d 1169 (C.D. Cal. 2008) ........ 19

11 *Garcia v. Sun Pacific Farming Cooperative,* 2008 WL 2073979 (E.D. Cal. May

12 14, 2008)     ......................................................................................................... 18

13 *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147 n.13 (1982) .............................. 12

14 *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 691

15 F.2d 1335, 1342 (9th Cir. 1982) .......................................................................... 11

16 *In re: Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305 (3rd Cir. 2009) ............. 12

17 *In re Tableware Antitrust Litig.,* 241 F.R.D. 644 (N.D. Cal. 2007) ..................... 11

18 *Jimenez v. Domino's Pizza, Inc.,* 238 F.R.D. 241 (C.D. Cal. 2006) ..................... 10

19 *Jones v. Roy,* 202 F.R.D. 658 (M.D. Al. 2001) .................................................... 9

20 *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) ......................... 18

21 *Lanzarone v. Guardsmark Holdings, Inc.*, 2006 WL 4393465

22 at (C.D. Cal. 2006) .................................................................................... 13, 18,19

23 *McCarthy v. Kleindienst,* 741 F.2d 1406, 1419 (D.C. Cir. 1984) ........................ 11

24 *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) ......................... 18

25 *Molski v. Gleich,* 318 F.3d 937 (9th Cir. 2003) ) ................................................9, 12

26 *Nelson v. King County*, 895 F.2d 1248 (9th Cir. 1990) .......................................13

27  ii

28

*O'Connor v. Boeing N. Am., Inc.,* 197 F.R.D. 404 (C.D. Cal. 2000) ................... 10

*Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584 (7th Cir. 1993)  10,15

*Rogers v. Nations Credit Fin. Servs. Corp.,* 2000 WL 1499354, at *5 (N.D. Cal., Aug. 7, 2000) ............................................................................................ 11

*Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474 (E.D. Cal. 2006) ......... 11

*Stevens v. Harper*, 213 F.R.D. 358 (E.D. Cal. 2002) ............................................ 11

*Stout v. Byrider,* 228 F.3d 709 (6th Cir. 2000) ................................................10,14

*Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227 (9th Cir. 1996) ........................ 11

*Velasquez v. Khan*, 2005 WL 1683768, *4 (E.D.Cal. July 11, 2005) .................. 10

*Wachtel v. Guardian Life Ins. Co.,* 453 F.3d 179 (3rd Cir. 2006) ....................... 13

*Wang v. Chinese Daily News, Inc.,* 231 F.R.D. 602 (C.D. Cal. 2005) ................ 15

*White v. Starbucks, Corp.,* 497 F. Supp.2d 1080 (N.D. Cal. 2007) ..................... 15

*Wiegele v. FedEx Ground*, No. 06 cv 1330 WL 410691, * 7 (S.D. Cal. Feb. 12, 2008)       ............................................................................................... 13

*Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180 (9th Cir. 2001) .........10,11,19

### Statutes

Federal Rules of Civil Procedure, Trial Rule 23(b)(2) .................... 1,8,9,12, 13,22

Federal Rules of Civil Procedure, Trial Rule 23(b)(3) ................. 8,10,11,12,20,22

Cal. Labor Code § 221 ........................................................................................   3

Cal. Labor Code § 223 ........................................................................................   3

Cal. Labor Code § 512 ........................................................................................   3

Cal. Labor Code § 226 ................................................................................3, 19,20

### Other

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 at 535-39 (2d ed. 1986) ...................................................... 11,19

*Advisory Comm. Notes to 1966 Amendment, subdivision (b)(2)* ......................... 12

*Cal. Industrial Welfare Commission Transportation Wage Order No. 9-2001, § 3(L)(1), (2)* ........................................................................................................ 3

iv

1
2
3

Defendant, C.R. England, Inc. ("England"), by counsel, respectfully submits its Opposition to Plaintiff's Motion for Class Certification ("Class Motion").

4

## I.   <u>INTRODUCTION</u>

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

Plaintiff, Barrette Jasper ("Jasper"), was employed by England as a delivery driver for England's Coca Cola account in Ontario, California for approximately seven months.   Jasper has asserted five claims allegedly arising out of his short employment, three[1] of which he has requested to be certified as either a Rule 23(b)(2) or 23(b)(3) class action.   As discussed below, and confirmed by the very cases cited by Jasper in the Class Motion, as a former employee, Jasper has no standing to pursue a Rule 23(b)(2) class action. Moreover, while the Class Motion cites cases that have certified similar claims, Jasper has failed to offer this Court any basis on which to demonstrate the following:  his claims are typical of the class he hopes to represent; how he intends to prove the claims he seeks to certify through evidence common to the class; that issues common to the class predominate over issues impacting individual class members; and the proposed class is a superior method for resolving the claims asserted.  A review of the record and the elements required to prove each claim demonstrates that Jasper cannot satisfy his burden.  Plaintiff's Class Motion should therefore be denied.

21
22
23
24
25
26

---

[1]  While not expressly stated in the Class Motion, Jasper's counsel has confirmed that Plaintiff is not seeking to certify Jasper's overtime claim found in his First Cause of Action. *Deposition of Barrette Jasper* ("Jasper Dep.") at 135, attached as *Exhibit 1*.

27
28

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## II.   **FACTS**

England employs five categories of drivers who reside in California:[2]  One-Way drivers, who are over-the-road drivers taking loads to and from California to destinations across the country and are frequently on the road for weeks at a time *Declaration of Kirk Freimuth* ("Freimuth Decl.") at ¶ 3, attached as *Exhibit 2*; Local One-Way drivers who make local pick-up and deliveries of loads for One-Way drivers, i*d.* at ¶ 5; Dedicated Local drivers who service specific shippers, such as Coca Cola, i*d.*; Dedicated Line Haul drivers who also work hauling shipments for specific accounts (such as Coca Cola) longer distances than the Coke Local drivers, i*d.* at ¶ 4**;** and Intermodal drivers who haul loads to and from railheads in Los Angeles and Stockton.  *Id.* at ¶ 5.  In addition to the differences in their job duties, each of these categories is compensated differently.  One-Way drivers and Coke Line Haul drivers are paid on a mileage basis (i.e., cents per mile), One-Way Local drivers are paid salary, and Intermodal drivers and Coke Local drivers are paid using a schedule of rates related to ranges of distances they drive, called "ring rates."  *Deposition of Kirk Freimuth* ("Freimuth Dep.") at 70-

---

[2]  In the Class Motion, Jasper fails to offer a clear definition of the putative class he hopes to certify.  Specifically, the Class Motion variously purports to define the class as "all  drivers who *worked* in California," and "all drivers who were *employed* in California."  *Class Motion* at 1; *Memorandum of Points and Authorities in Support of Class Certification* ("Plaintiff's Memorandum") at 3, 22 (emphasis supplied).  The distinction is significant.  England currently employs over approximately 3,300 drivers across the country, some indeterminate number of whom have delivered loads from or to California during the class period. England employs significantly fewer drivers who list their residence as California.  Significant numbers of these drivers are One-Way drivers who spend the vast majority of their time on the road outside of California.  The Class Motion makes no effort to reconcile these differing class definitions, nor to demonstrate that the California causes of action would apply extraterritorially to California residents outside of California or non-California residents who happen to be performing work temporarily within California.  Leaving aside the other shortcomings of the Class Motion, this failure significantly impacts the manageability of the proposed class.

2

73, *Exhibit 3*, attached as *Exhibit 2*.   Prior to March 2007, Coke Local drivers were paid on an hourly basis, including overtime. *Freimuth Dep.* at 68, 82.[3]

England employed Jasper as a Coke Local driver for approximately seven months from August 2007 through February 2008.  *Declaration of Barrette Jasper* ("Jasper Decl."), attached to Class Motion at ¶ 2.  At no time during his employment was Jasper compensated on an hourly basis nor was he ever entitled to or paid overtime. *Jasper Dep.* at 134-135.  Notwithstanding the fact that he was not compensated on an hourly basis and is exempt from the payment of overtime, Jasper has advanced a claim seeking to recover overtime pay for himself. *Compl. Count I.*

Jasper is only seeking to certify three claims:  that he missed certain meal and rest breaks (in violation of Cal. Labor Code § 512), that his wage statements did not contain certain information (in violation of Cal. Labor Code § 226(a)), and that England improperly deducted certain expenses from his wages (in violation of Cal. Labor Code §§ 221-223).

### A.    Meal and Rest Breaks

England advises all of its drivers of the regulations regarding meal and rest breaks and of its policy affording three meal breaks totaling four hours in each 24-hour period. *Freimuth Dep.* at 119-121.  England also advises its drivers who go through orientation in California of the State meal and rest break requirements and places posters disclosing those requirements in England's California

---

[3] Each category of driver is exempt from the payment of overtime under California provisions exempting drivers whose hours of service are regulated by the U.S. Department of Transportation ("Interstate Drivers") or by the California Highway Patrol ("Intrastate Drivers).  *Cal. Industrial Welfare Commission Transportation Wage Order No. 9-2001, § 3(L)(1), (2).*  Nevertheless, England voluntarily elected to pay these employees overtime when they were compensated on an hourly basis. *Freimuth Dep.* at 68.

facilities.  *Id.* at 127-28, 133; *Declaration of Dennis Parrotte* ("Parrotte Decl.") at ¶ 7 (attached as *Exhibit 4*); *Declaration of Rickey Fraley* ("Fraley Decl.") at ¶ 12 (attached as *Exhibit 5)*.  England takes affirmative steps to ensure that driver meal and rest breaks will not interfere with shipper delivery requirements, including staggering driver start times so that breaks are unlikely to overlap.  *Freimuth Dep.* at 142.

Because of the nature of the trucking business, it is impractical for England to schedule a driver in advance for a meal or rest break.  *Jasper Dep.* at 58-59; *Fraley Decl.* at ¶¶ 3, 10; *Declaration of Lewis Crumby* ("Crumby Decl.") at ¶ 7 (attached as *Exhibit 6*); *Declaration of Mark Fleming* ("Fleming Decl.") at ¶¶ 3-4, 7, 12 (attached as *Exhibit  7)*.  Instead, it is up to the drivers to schedule their own meal and rest breaks as they fit in with their activities during the day.  *Jasper Dep.* at 84-85; *Parrotte Decl.* at ¶¶ 3-6; *Fraley Decl.* at ¶¶ 3-4, 8-11; *Declaration of Vance Vogel* ("Vogel Decl.") at ¶¶ 4-6 (attached as *Exhibit 8*); *Crumby Decl.* ¶¶ 2-3, 5-7; *Declaration of Kevin McClure* ("McClure Decl.") at ¶¶ 3-7 (attached as *Exhibit 9*); *Fleming Decl.* ¶¶ 3-4, 6-7, 11-12; *Declaration of Krystee Leggette* ("Leggette Decl."), at ¶ 3, (attached as *Exhibit 10)*.  England drivers, including Jasper, frequently have significant down time during the day (waiting for trailers to be loaded or unloaded and in between appointments with long delivery times).  *Jasper Dep.* at 35-36,45-48, 60, 65, 111;  *see, e.g., Parrotte Decl.* at ¶ 6; *Fraley Decl.* at ¶ 11; *McClure Decl.* at ¶ 5.

Jasper acknowledges that England provided him with a Driver Certification Card outlining England's break policy before he hauled a single load for England. *Jasper Dep.* at 20-22.  Jasper testified that it was his understanding that that policy applied to all England drivers, including him. *Id.* at 22-23. Jasper testified that he was not aware of any policy prohibiting meal and rest breaks, *id.* at 27-28,

that no one ever told him that he could not take a meal or rest break (*id.* at 26-27, 66) and that he never complained about being unable to take a meal or rest break. *Id.* at 162-163, 166.  Jasper testified that England never affirmatively prohibited him from taking meal and rest breaks and that he took those breaks as his schedule permitted.  *Id.* at 25-28, 35-36, 46-49, 59-60, 65-66, 84-85, 111, 164-165, 170.  Sometimes Jasper elected to go home rather than take a break, even though he had only worked five hours during the day.  *Id.* at 65, 161.  Jasper could not recall how many meal or rest breaks he missed or the reasons why he missed them. *Id.* at 176-177.  Jasper was not aware of any uniform policy at England prohibiting meal and rest breaks.  *Id.* at 27.  Nor does Jasper purport to know whether any other driver missed a meal or rest break, if they did why, or whether the reason for missing a break had any relationship to the reason he missed a break.  *Id.* at 111, 145-149.  Jasper testified that the only way to find out whether any other driver took a meal or rest break, and if not, why, was to talk to that driver.  *Id.* at 163, 165-166.

**B.    Wage Statements**

Jasper's pay stubs accurately reflected the loads that he hauled and the rate that he was paid for those loads.  *Id.* at 116.  Jasper testified that England explained to him how he would be compensated and that he was able to confirm that he was paid for each of the loads that he delivered for England from information on his pay stubs.  *Id.* at 116, 123-124, 134, 138-139.  When asked, Jasper said that there was no information missing from his pay stubs that would have been useful to him.  *Id.* at 143.

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

C.    **Deductions From Wages**

England offers its drivers the opportunity to participate in the Driver Legal Program ("DLP"). The DLP is a voluntary program that provides participants with legal assistance to dispute and resolve citations (e.g., parking tickets) and violations (e.g., speeding tickets) that participants receive while driving for England. *Id.* at 99-101; *Freimuth Dep.* at 104-105. Jasper acknowledged that he voluntarily elected to participate in the DLP, that it was for his benefit, not England's, and that he signed a written authorization for $2.98 to be deducted from his pay each week to participate in the program. *Jasper Dep.* at 99-101, 104-107. Jasper claimed that he signed up for the program by mistake because he was not paying attention to the documents he was filling out and signing. *Id.* at 101-102. Jasper also testified that other drivers likely needed the DLP and that, absent asking each driver, he would have no way of knowing whether they mistakenly signed up for the DLP or did so because they felt they needed the protection or services offered by the DLP. *Id.* at 151-152.

England establishes a reserve fund for new employees by deducting $20 per week for 14 weeks. *Freimuth Dep.* at 107. Drivers who remain with England for two years receive their reserve account back with interest. *Fraley Decl.* at ¶ 15. Similarly, when a driver leaves England's employ before two years, his reserve account is returned to him. *Jasper Dep.* at 133-134. England returned Jasper's reserve account to him in full and with interest after his termination. *Id.*

Even though not required to do so, England allows its employees to obtain salary advances. *Jasper Dep.* at 124. When an employee takes a salary advance, England deducts that advance from the wages otherwise due the employee. *Id.* at 130, 137; *Freimuth Dep.* at 106. Conversely, England reimburses its drivers for business expenses they incur in performing their job. *Freimuth Dep.* at 108-109;

*Jasper Dep.* at 184. Jasper testified that every time he submitted receipts for business expenses England reimbursed him for those expenses. *Jasper Dep.* at 126-127, 130. England has never deducted its business expenses from an employee's wages. *Id.* at 96, 154-156.

Jasper's Complaint alleges that England had a policy of making unauthorized deductions for England's business expenses from its employees' pay. *Compl.* ¶ 47. When asked, Jasper testified that he was reimbursed for every business expense for which he submitted a receipt, that England never charged him for any of its business expenses and does not have any knowledge of any other employee being so charged. *Jasper Dep.* at 126-128, 154-156. Jasper testified that he authorized the remaining deductions – salary advances and health insurance – and that England disclosed the costs associated with his elections. *Id.* at 124, 130-131, 184.

Jasper testified that he had no knowledge regarding the operations of England's Intermodal, One-Way and Coke Line Haul drivers. *Id.* at 145-148. When asked about his knowledge or understanding of the experiences of other drivers, Jasper testified, "I don't care about those guys. I don't know. . . . I only know about me." *Id.* at 147.

## III.   SUMMARY OF ARGUMENT

Jasper, as a former employee, lacks standing to seek injunctive relief on behalf of class of current employees (the only putative class members who could be benefited from such relief). Moreover, even if Jasper did not lack standing to bring injunctive claims, Jasper has made no showing to demonstrate that the monetary relief he is seeking (relief which Jasper must admit is the only relief he seeks for himself) is secondary to the injunctive relief he requests. Jasper has

therefore failed to carry his burden of demonstrating the propriety of certifying a Rule 23(b)(2) class.

Jasper has also failed to carry his burden of establishing the propriety of certifying a Rule 23(b)(3) class.  Specifically, while Jasper's Complaint and Class Motion identify claims he asserts are capable of class resolution, neither the Class Motion nor Jasper's declaration or deposition illuminate any evidence, common to the putative class as a whole, that would tend to prove the liability elements of those claims.  Indeed, Jasper's own testimony defeats his individual claims and demonstrates that, whether any absent putative class member has evidence to support the claims in the Complaint can only be determined through the testimony of that putative class member.  Jasper has also offered no evidence that would demonstrate that his experiences as a Dedicated Local driver for Coke are similar to the experiences of One-Way, Intermodal, Coke Line Haul, or even other Dedicated Local drivers. Thus, Jasper has failed to demonstrate that his claims are typical of the class (as required by Rule 23(a)(3)).

Similarly, far from demonstrating that common issues predominate, the record in this case, including Jasper's own testimony, demonstrates that there was no uniform policy or practice, applicable to the class as a whole, that would establish the liability elements of the claims advanced.  Rather, the evidence required to prove liability for each class member's claim will require the testimony of each class member.  Jasper has therefore failed to satisfy Rule 23(b)(3)'s predominance requirement or to demonstrate that a class action is a superior method of resolving the claims advanced in the Complaint.

The Class Motion should therefore be denied.

1    IV.    **ARGUMENT**

2          A.    **Rule 23 Standards For Class Certification**

3          Jasper seeks to certify this case under Rules 23(b)(2) and (b)(3).  In order

4    to demonstrate entitlement to such certification, Jasper must first establish each of

5    the four prerequisites set forth in Rule 23(a) (commonly referred to as

6    numerosity, commonality, typicality, and adequacy of the class representative and

7    counsel).  Next, for Rule 23(b)(2) certification, Jasper must demonstrate that "the

8    party opposing the class has acted or refused to act on grounds that apply

9    generally to the class, so that final injunctive relief or corresponding declaratory

10   relief is appropriate respecting the class as a whole."  Fed.R.Civ.P. 23(b)(2).  In

11   addition, a plaintiff seeking monetary relief may only obtain Rule 23 (b)(2)

12   certification if he demonstrates that the "damages are not the 'predominant' relief

13   sought, but instead are 'secondary' to the primary claim for injunctive or

14   declaratory relief."  *Molski v. Gleich,* 318 F.3d 937, 947 (9th Cir. 2003).  In order

15   to satisfy this standard, at a minimum, Jasper must show that, "even in the

16   absence of a possible monetary recovery, reasonable plaintiffs would bring the

17   suit to obtain to the injunctive or declaratory relief sought; and (2) the injunctive

18   relief sought would be both reasonably necessary and appropriate were the

19   plaintiffs to succeed on the merits."  *Dukes v. Wal-Mart, Inc.,* 509 F.3d 1168,

20   1186 (9th Cir. 2007).  Former employees, like Jasper, lack standing to seek

21   injunctive relief and therefore cannot advance a Rule 23(b)(2) class nor satisfy the

22   Ninth Circuit's test for determining whether monetary relief is predominant or

23   secondary.  *See id.* at 1189 (holding that former employees must be excluded

24   from a Rule 23(b)(2) class).

25          In order to satisfy Rule 23 (b)(3) certification, Jasper must show that "the

26   questions of law or fact common to the members of the class predominate over

27                                                    9

28   _____

any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). If Jasper fails to establish any one of these requirements, this Court must refuse to certify the class. *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186, 1188-89 (9th Cir. 2001); *see also Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993).

Jasper cannot satisfy this burden by paying lip service to the elements of the Rule. "[T]he Rule 23 requirements are not merely procedural niceties; they serve to protect the essential values of due process and the fundamental principles of our jurisprudence." *Jones v. Roy,* 202 F.R.D. 658, 662 (M.D. Al. 2001). Rather, he must sufficiently demonstrate how he intends to prove his claims on a class basis so that the Court can "envision the form trial on those issues would take." *Clay v. American Tobacco, Co.,* 188 F.R.D. 483, 489 (S.D. Ill. 1999); *O'Connor v. Boeing N. Am., Inc.,* 197 F.R.D. 404, 410 (C.D. Cal. 2000); *see also Wachtel v. Guardian Life Ins. Co.,* 453 F.3d 179, 185 (3rd Cir. 2006) (reversing certification of class where district court failed to clearly specify the claims, issues and defenses to be tried in class).

Thus, for Rule 23(b)(3) purposes, the central determination this Court must make is whether Jasper has made a sufficient showing to demonstrate that the claims of the putative class are sufficiently similar to allow the success or failure of his claims to be dispositive of the claims of those individuals who will not be present at trial and will thus offer no evidence supporting or defeating those claims. *See Stout v. Byrider,* 228 F.3d 709, 717 (6th Cir. 2000) (summarizing the typicality standard as showing that, "as goes the claim of the named plaintiff, so go the claims of the class"); *Jimenez v. Domino's Pizza, Inc.,* 238 F.R.D. 241, 251

(C.D. Cal. 2006); *Stevens v. Harper*, 213 F.R.D. 358, 377 (E.D. Cal. 2002).  The Class Motion offers this Court no basis on which to make such a determination.

> In deciding whether to certify the proposed class, the court must identify issues involved in the cases and determine which of them "are subject to generalized proof . . . applicable to the class as a whole" and which must be the subject of proof on behalf of individualized class members.  "Because no precise test can determine whether common issues predominate, the court must pragmatically assess the entire action and the issues involved.

*In re Tableware Antitrust Litig.,* 241 F.R.D. 644, 651 (N.D. Cal. 2007) (quoting *Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474, 489 (E.D. Cal. 2006)). "'If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate.'"  *Zinser,* 253 F.3d at 1189 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 at 535-39 (2d ed. 1986)); *see Rogers v. Nations Credit Fin. Servs. Corp.,* 2000 WL 1499354, at *5 (N.D. Cal., Aug. 7, 2000) (denying class certification where liability depended upon individualized evidence from class members).

This Court may and should consider matters beyond the pleadings in order to ascertain whether the asserted claims or defenses are susceptible of resolution on a class-wide basis. *See McCarthy v. Kleindienst,* 741 F.2d 1406, 1419 n.8 (D.C.Cir. 1984); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982).  "[D]istrict courts must conduct a rigorous analysis into whether the prerequisites of Rule 23 are met before certifying a class." *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1233

11

1  (9th Cir. 1996) (internal citations omitted). The Court's "rigorous analysis" is

2  necessary to conserve judicial resources, protect defendants, and safeguard the

3  interests of absent class members whose claims the named plaintiffs seek to

4  litigate. *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 157 n.13 (1982).

5        As the Third Circuit recently noted, it is not enough that the plaintiff

6  express an intention to "try the case in a manner that satisfies the predominance

7  requirement." *In re: Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 321 (3rd

8  Cir. 2009).   Rather, before certifying a Rule 23(b)(3) class, the court must

9  evaluate the record and "find that the evidence more likely than not establishes

10 each fact necessary to meet the requirements of Rule 23." *Id.* at 320.

11       As demonstrated below, Jasper has failed to demonstrate that his claims are

12 typical of the class or that the claims he advances are suitable for certification

13 under Rule 23(b)(2) or (b)(3).

14       **B.      Jasper Has Failed To Satisfy Standards For Rule 23(b)(2)
15                 Certification**

16       The very cases on which Plaintiff relies defeat his request for Rule 23(b)(2)

17 certification.  Specifically, as noted above, Rule 23(b)(2) was designed to allow

18 plaintiffs to seek primarily injunctive or declaratory relief. *See Advisory Comm.*

19 *Notes to 1966 Amendment, subdivision (b)(2).*  While a plaintiff may also seek

20 monetary relief in a (b)(2) class, it must demonstrate that  "damages are not the

21 'predominant' relief sought, but instead are 'secondary' to the primary claim for

22 injunctive or declaratory relief." *Molski,* 318 F.3d at 947.  In order to satisfy this

23 standard, at a minimum, Jasper must show that, "even in the absence of a possible

24 monetary recovery, reasonable plaintiffs would bring the suit to obtain to the

25 injunctive or declaratory relief sought; and (2) the injunctive relief sought would

26

27                                        12

28

be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." *Wal-Mart,* 509 F.3d at 1186.

Here Jasper cannot satisfy this standard, because his is a former employee and therefore lacks standing to seek injunctive or declaratory relief. *See id.* at 1189 (holding that class members who were not employed at the time the suit was filed lack standing to pursue injunctive or declaratory relief and therefore must be excluded from the class); *see also Nelson v. King County*, 895 F.2d 1248 (9th Cir. 1990) (affirming district court's denial of class certification under Rule 23(b)(2) because named plaintiffs were former employees and therefore lacked standing to assert claims for injunctive relief); *Wiegele v. FedEx Ground*, No. 06 cv 1330, 2008 WL 410691, * 7 (S.D. Cal. Feb. 12, 2008) (holding that, because the plaintiffs are former employees, they could not "benefit from prospective injunctive relief" and, therefore, "certification under Rule 23(b)(2) [was] inappropriate."); *Lanzarone v. Guardsmark Holdings, Inc.*, 2006 WL 4393465 at * 4-5 (C.D. Cal. 2006) (denying Rule 23(b)(2) certification "because Plaintiff, a former employee, lacks standing to pursue injunctive relief."). Where, as here, the named plaintiff Jasper is a former employee, he cannot demonstrate that damages are secondary to injunctive relief.[4]  As the Ninth Circuit noted in *Wal-Mart*, a case relied upon in the Class Motion, "it is difficult to say that, 'even in the absence of a possible monetary recovery, reasonable plaintiffs [who lack standing to seek injunctive or declaratory relief] would [nonetheless] bring th[is] suit to obtain the injunctive or declaratory relief sought.'" *Wal-Mart*, 509 F.3d at 1189 (bracketed material in original).

Jasper's request for Rule 23(b)(2) certification should therefore be denied.

---

[4] *Wang v. Chinese Daily News, Inc.,* 231 F.R.D. 602 (C.D. Cal. 2005) holds no differently. In that case, the named plaintiffs included *both* current and former employees. *Id.* at 604.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.** **Jasper Has Failed To Demonstrate That His Claims Are Typical Of The Class**

The Class Motion makes no effort to demonstrate that Jasper's experiences, relevant to his claims, as a Coke Local driver have any relationship to the experiences of Coke Line Haul drivers, One-Way drivers, One-Way Local drivers, Intermodal drivers, or even other Coke Local drivers. As noted above, the differences between the duties and compensation structures of these various types of drivers directly impacts the claims Jasper advances. For example, unlike Jasper who testified that all of his trips were local and frequently only involved "driving around the corner" (*Jasper Dep.* at 66), One-Way drivers are on the road for weeks at a time. *See, e.g., Fraley Decl.* ¶3. Jasper acknowledged that there is *no way* One-Way drivers were missing rest break and that he was not contending otherwise in his suit. *Jasper Dep.* at 146. Of course, Jasper also testified that he had no reason or basis to know whether *any* other driver ever missed a meal or rest break, and, if so, whether the reason he missed it was the same as Jasper's reasons for missing meal and rest breaks. *Id.* at 42-43, 111-112, 145-150.

The manner in which the various drivers were compensated would presumably also impact Jaspers' remaining claims regarding information allegedly missing from his wage statements and deductions from compensation. While Jasper testified that there was nothing missing from his pay stubs that would have been helpful to him and that there were no unauthorized deductions from his pay, the Class Motion makes no effort to explain how Jasper's experiences relate to those of the other putative class members, including Coke Local drivers who were, prior to March, 2007, compensated differently. As the Class Motion makes no such showing, it cannot be said to have demonstrated that, as go Jasper's claims, "so go the claims of the class." *Stout,* 228 F.3d at 717.

14

This failure alone justifies denying the Class Motion. *Retired Chicago Police Ass'n,* 7 F.3d at 596.

### D.  Jasper Has Not Demonstrated Predominance and Superiority

Jasper has failed to demonstrate that any of his claims can be resolved through the class action device. The Class Motion is completely *silent* regarding the elements of each of Jasper's claims or how those claims could be proven on behalf of the class through common evidence applicable to the class as a whole. Jasper has therefore failed to carry his burden of demonstrating that common issues predominate and that the class action device is superior to other methods of adjudicating the class claims. As demonstrated below, the record in this case precluded Jasper from making such a showing.

### 1.  Meal And Rest Break Claims

Jasper's Second and Third Causes of Action attempt to plead a violation of California's meal and rest break statutes. Proving that England violated California's meal and rest break statutes requires more than just demonstrating that Jasper missed a meal or rest break. Whether framed in the context of his individual claim or the claims of the absent class, Jasper must demonstrate that England had a uniform policy or practice that prevented drivers from taking meal and rest breaks. *See, e.g., Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 587-88 (C.D. Cal. 2008); *White v. Starbucks, Corp.,* 497 F. Supp.2d 1080, 1086 (N.D. Cal. 2007). The record in this case not only fails to establish the existence of such a policy or practice, it demonstrates just the opposite.

England affirmatively advised its drivers of its break policy (which afforded more generous breaks than required by the California statutes) and the California meal and rest break rules. *Freimuth Dep.* at 119-121, 127-128, 133; *Jasper Dep.* at 20-22; *Fraley Decl.* at ¶¶ 3, 12; *Crumby Decl.* at ¶ 2; *McClure*

*Decl.* at ¶ 4.  England had no policy prohibiting drivers from taking meal and rest breaks, never told them not to take a meal and rest break and never did *anything* to prevent drivers from taking *any* breaks they chose to take.  *Jasper Dep.* at 25-28, 35-36, 46-49, 59-60, 65-66, 84-85, 111, 164-165, 170; *Crumby Decl.* at ¶¶ 6-7; *McClure Decl.* at ¶ 4; *Fleming Decl.* at ¶¶ 3, 7; *Fraley Decl.* at ¶¶ 3, 11; *Vogel Decl.* at ¶ 6.  Rather, England left it up to the driver's discretion as to when and how long he should take for meal and rest breaks.  *Freimuth Dep.* at 119; *Jasper Dep.* at 46, 48, 59, 85; *Parrotte Decl.*  at ¶ 6; *Crumby Decl.* at ¶¶ 2, 5, 7; *McClure Decl.* at ¶ 3, 5; *Fleming Decl.* at ¶¶ 4, 7, 11; *Fraley Decl.* at ¶¶  3, 4, 9; *Vogel Decl.* at ¶ 4; *Leggett Decl.* at ¶ 3.  Jasper does not testify otherwise.  Jasper testified that England advised him of its policy of allowing drivers to take breaks totaling four hours in any given day.  *Jasper Dep.* at 20-23.  Jasper also testified to the following:

- Scheduling meal and rest breaks within the course of his deliveries was his responsibility.  *Id.* at 85, 161.
- There were many different opportunities during the course of the day to take breaks and eat his lunch.  *Id.* at 35-36, 46-48, 60, 65-66, 111, 161.
- No one from England ever told him that there was a policy against taking meal and rest breaks. *Id.* at 26-28.
- No one from England ever told him that he could not take a meal or rest break. *Id.* at 26, 66.
- No one from England ever prevented him from taking a meal or rest break when he wanted to take one.  *Id.* at 26-28.

In fact, on those occasions that Jasper missed a meal and rest break, the reason was not always the same.  Specifically, Jasper testified that he sometimes

missed breaks because he had *too many loads* and wanted to make sure his deliveries were completed on time, while other times he elected to go home instead of taking a meal or rest break because England was not giving him *enough deliveries* to make it worthwhile to stay at work. *Compare Jasper Dep.* at 26 ("The way they was putting work on me I just couldn't [take breaks]") *with Jasper Dep.* at 65-66 (explaining that on those days that he completed his loads in five hours or less, he elected to "Drive the truck and go home" instead of taking a break). Jasper acknowledged that he had no idea whether other drivers missed any meal and rest breaks and, if they did miss breaks, why, and that the only way to make that determination was to ask each of those drivers. *Jasper Dep.* at 163. The driver declarations attached to this Opposition put to rest any suggestion that there is a uniform policy or practice for taking breaks or the reason for missing them. *Compare Parrotte Decl.* at ¶ 4 ("On average, I have about one hour per stop during which time I can take a break . . . ."), *with Fraley Decl.* at ¶¶ 4, 8 (explaining that when he operated as a One-Way driver he "trip-planned" and took breaks when it "made most sense to me to take them" but as a Coke Local driver he usually takes his "first break of the day for 30 minutes between 4:30 and 5:00 a.m."), *with Vogel Decl.* at ¶¶ 4-5 ("I try to take two 15 minute breaks during the day and one 30 minute meal break . . . . Some days, I elect not to take breaks . . . because I can move on to the next delivery and finish my loads for the day quicker."), *with Crumby Decl.* ¶ 5 ("I will take my meal and rest breaks at customer locations while my truck is being loaded or unloaded, while I am in transit with a load as there are oftentimes enough time between the pick-up appointment and delivery appointment times to take a break, or before I send my empty message . . . .").

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Jasper has therefore demonstrated that there was no uniform policy or practice that prevented him or any other driver from taking meal and rest breaks. Unable to adduce evidence of a uniform policy or practice prohibiting meal and rest breaks, these claims are unsuitable for class treatment. *See Brown,* 249 F.R.D. at 587-88 (denying certification of driver meal and rest period claims virtually identical to those asserted in this case based on the predominance of individual issues); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) (denying certification on meal periods claim and noting that *Cicairos v. Superior Court,*[5] 35 Cal. Rptr. 3d 243 (Cal. Ct. App. 2005), relied upon non-persuasive California Department of Labor Standards Employment opinion letters, all of which are currently under review pursuant to Executive Order S-2-03); *Garcia v. Sun Pacific Farming Cooperative,* 2008 WL 2073979, *12 (E.D. Cal. May 14, 2008) ("due to the conflicting evidence on . . . wage and hour violation . . . the plaintiffs have not shown commonality"); *Blackwell v. Skywest Airlines, Inc.,* 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to certify class action because individual issues predominated when different employee stations provided different practices with respect to meal periods); *Lanzarone*, 2006 WL 4393465 at * 4-5 (C.D. Cal. 2006) (denying motion for class certification when common questions

---

[5] The Class Motion makes no attempt to reconcile or distinguish the numerous cases that have found meal and rest breaks claims unsuitable for class treatment and instead relies almost exclusively on *Cicairos v. Summit Logistics, Inc.,* 133 Cal. App.4[th] 949 (2006) to support his request for certification. Of course, *Cicairos* provides no support for the proposition that these claims are suitable for class treatment. Leaving aside that court's dubious interpretation of the requirements for complying with California's meal and rest break requirements, the *Cicairos* case was no longer being brought as a class action. Rather, the court simply held that the defendant was not entitled to *summary judgment* on the meal and rest break claims and that each of the multiple plaintiffs was entitled to offer his *own* evidence regarding the meal and rest breaks he missed and the reasons he missed them. *Id.* at 962-963 (reversing trial court's order granting defendant summary judgment on meal and rest break claims). Nothing in *Cicairos* suggests that the plaintiffs were entitled to summary judgment on these claims or that their testimony would not be required at trial.

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

did not predominate because varied meal and rest periods policies varied from shift to shift).  As the *Brown c*ourt concluded, individual questions predominate as to whether drivers – who admittedly were authorized and permitted to take rest periods – did not take rest periods and, if not, whether they did so voluntarily or by coercion.  *See Brown,* 249 F.R.D. at 587-88; *Lanzarone,* 2006 WL 4393465 at *4-5.

Jasper's request for class certification of his Second and Third Cause of Action should therefore be denied.

### 2.    Wage Statement Claims

The Class Motion claims that England has violated Cal. Labor Code § 226(a) by failing to include England's "legal name and a clear explanation of how the wages have been calculated."  *Class Motion* at 1-2.   To maintain a cause of action for an alleged violation of Cal. Labor Code § 226, Jasper must do more than demonstrate non-compliance; he must demonstrate that he suffered *an injury* as a result of C.R. England's knowing and intentional failure to provide an accurate itemized wage statement. Cal. Lab. Code § 226; *Elliot v. Spherion Pac. Work, LLC,* 572 F. Supp.2d 1169, 1178-81 (C.D. Cal. 2008) (granting defendant's motion for summary judgment on itemized wage claim in class action lawsuit because plaintiff suffered no injury as a result of defendant's failure to properly itemize wage statements); *Velasquez v. Khan*, 2005 WL 1683768, *4 (E.D.Cal. July 11, 2005) (denying request for damages for violations of Cal. Labor Code § 226 because plaintiff failed to identify any basis for claimed injury).  In order to maintain this claim on behalf of a class, Jasper would also have to demonstrate that the information that was missing from his pay statements was also missing from other class members' and that those class members were injured in the same manner as he was.  *See Zinser,* 253 F.3d at 1189 (quoting 7A Charles Alan

Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 at 535-39 (2d ed. 1986)) ("'If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate.'").

Jasper has offered this Court no basis on which to make such a determination. First, Jasper unequivocally testified that England explained how he would be paid and that he was able to confirm from information contained on his pay stubs that he was paid for every load he hauled. *Jasper Dep.* at 116, 123, 134, 138-139. Thus, while the Class Motion may assert that Jasper's pay stubs were unintelligible and failed to disclose how he was paid, Jasper does not agree. Jasper also testified that there was no information missing from his pay stubs that would have been useful to him. *Id.* at 143. The facts of this case are therefore more stark than those in *Spherion Pac. Work, LLC* and *Kahn.* Not only has Jasper failed to identify any basis on which he has been injured by the alleged violation of Cal. Labor Code §226, he has affirmatively testified that his pay stubs provided him with all of the information that *he needed* them to provide.

Determining whether the same is true for the absent class – that is, whether any information allegedly missing from their pay stubs caused them any *injury* – would require calling each class member to testify. The Class Motion offers no evidence to the contrary nor any basis on which this Court could determine whether there was information uniformly omitted from the absent class' pay stubs that, unlike Jasper, injured the absent class. In sum, Jasper has failed to demonstrate any basis on which to prove the liability elements of the Section 226 claim through evidence common to the class.

Jasper's request for certification of his Fourth Cause of Action should be denied.

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

### 3.     Deduction Claims

Finally, the Class Motion asserts that England improperly deducted "amounts from its drivers' paychecks for lost or damaged freight, missing equipment, legal costs and even third party overtime expenses." *Class Motion* at 1.  This claim suffers from the same infirmities as the others, and an examination of the Class Motion reveals no explanation of how Jasper intends to prove these claims through the introduction of generalized evidence common to the class as a whole.

Jasper testified that England never deducted anything from his paycheck for damaged freight, missing equipment, or third party overtime expenses. *Jasper Dep.* at 96, 154.  Jasper also testified that he could not identify any other driver from whom England had made such deductions.  *Id.* at 155-156.  Moreover, contrary to the unsupported assertions of the Class Motion, Jasper testified that *every time* he submitted a receipt to England for a business expense he was reimbursed for that expense. *Id.*  at 126-128.

Of course, nothing prohibits an employer from deducting expenses and costs from its employees' pay where those expenses are authorized and are for the benefit of the employee, not the employer.  *See City of Oakland v. Hassey,* 728 Cal. Rptr. 3d 621, 642-43 (Cal. Ct. App. 2008) ("[D]eductions permitted by law to be made from wages pursuant to an employee's written request include insurance premiums, hospital and medical dues and other items that are for the benefit of the employee, not the employer.").  Jasper testified that each of the deductions he was complaining about fell into this category.  Specifically, Jasper acknowledged that he requested certain salary advances, which were for his benefit and that England disclosed the charges associated with receiving those advances. *Jasper Dep*. at 124-125, 184.  Jasper also testified that he voluntarily

signed up for the DLP and that the program was for his benefit, not England's. *Id.* at 99-101, 104.  Jasper also acknowledged that determining whether any other driver had a deduction that was unauthorized would require talking to that driver. *Id.* at 151-152.

Thus, Jasper's testimony demonstrates that he did not have any unauthorized deductions from his wages and, more importantly, the Class Motion offers no evidence common to the proposed class as a whole that would tend demonstrate that any absent class member had any such unauthorized deduction.

Jasper's request for certification of his Fifth Cause of Action should therefore be denied.

## V.   <u>CONCLUSION</u>

Jasper's Complaint and Class Motion are only legal theories looking for a plaintiff with facts and claims to fit them.  Jasper is not that plaintiff.  As noted above, Jasper lacks standing to maintain a Rule 23(b)(2) class.  Further, the Class Motion provides this Court with no basis on which to find that Jasper and his claims satisfy the requirements for certifying a Rule 23(b)(3) class.  Specifically, Jasper has failed to provide this Court any basis on which to find that his claims and the experiences allegedly giving rise to those claims are typical of the class of drivers whom he seeks to represent.  Similarly, Jasper has also failed to identify evidence common to the class that would establish the elements of the claims he seeks to advance.  Indeed, in stark contrast to Rule 23(b)(3)'s requirement that common issues predominate over questions affecting individual class members, Jasper's testimony establishes that he most likely cannot prevail on the claims he has advanced and determining whether any absent class member would obtain a different result would require the testimony of each such absent class member. This Court should therefore deny the Class Motion.

22

Dated: March 5, 2009                         Respectfully submitted,


                                             /s/ James H. Hanson
                                             James H. Hanson
                                             Adam C. Smedstad

                                             Attorneys for Defendant,
                                             C.R. ENGLAND, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2009, copy of the foregoing was filed electronically.   Notice of this filing will be sent to at Brian Van Vleck and Anthony Zaller, VAN VLECK TURNER & ZALLER at bvanvleck@vtzlaw.com and azaller@vtzlaw.com by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


                                             /s/ James H. Hanson
                                             James H. Hanson

H:\Users\bleive\Documents\CR England\By Jasper 8766.9\Pleadings\Class cert\Opposition.doc

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION