1

James H. Hanson (Ind. Bar No. 8100-49)
jhanson@scopelitis.com

2

R. Jay Taylor Jr. (Ind. Bar No. 19693-53)
jtaylor@scopelitis.com

3

SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
10 West Market Street, Suite 1500

4

Indianapolis, Indiana  46204
(317) 637-1777

5

Fax: (317) 687-2414

6

Kathleen C. Jeffries (Cal. Bar No. 110362)
kjeffries@scopelitis.com

7

Christopher C. McNatt, Jr. (Cal. Bar No. 174559)
cmcnatt@scopelitis.com

8

SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LLP
2 North Lake Avenue, Suite 460

9

Pasadena, CA 91101
(626) 795-4700

10

Fax:  (626) 795-4790

11

Adam C. Smedstad (Ill. Bar No. 6210102)
asmedstad@scopelitis.com

12

SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
30 W. Monroe Street, Suite 600

13

Chicago, Illinois 60603
 (312) 255-7200

14

Fax:  (312) 422-1224

15

Attorneys for Defendant,
C.R. England, Inc.

16

17

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

18

19

BARRETTE  JASPER  and  DARRIN
COOK on behalf of

20

themselves and all others similarly
situated,

21

22

Plaintiffs,

23

vs.

24

C.R. ENGLAND, INC.,
and DOES 1 through 100, inclusive,

25

26

Defendants.

27

28

CASE NO. 08-CV-05266 GW (CWx)

**DEFENDANT'S OPPOSITION TO
PLAINTIFFS' RENEWED
MOTION FOR
CLASS CERTIFICATION**

Date:   June 6, 2011
Time:   8:30 a.m.
Room: 10

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................ i

TABLE OF AUTHORITIES ........................................................................ iii

I.      INTRODUCTION AND SUMMARY ............................................ 1

II.     FACTS ............................................................................................ 4

    A.     England and Plaintiffs .......................................................... 4

    B.     Meal And Rest Breaks .......................................................... 4

III.    ARGUMENT ................................................................................ 12

    A.     Plaintiffs' Break Claims Cannot Be Certified Under Rule
         23(b) (3) .............................................................................. 12

        1.     Rule 23(b)(3) Demands Common Proof ............................. 12

        2.     Class Certification Must Be Denied Unless Plaintiffs
             Can Show How England's Generally Applicable
             Policies Prevented Meal Breaks With Common
             Evidence And Without the Need For Testimony From
             Individual Class Members .................................................. 13

        3.     The Driver Logs Do Not Prove That Breaks Were
             Missed ................................................................................ 14

        4.     Even If Driver Logs Showed All Missed Breaks, They
             Do Not Show Why Breaks Were Missed ........................... 16

        5.     Plaintiffs' Rest Break Claims Cannot Be Certified ............ 19

        6.     Plaintiffs' Purported "Statistical Analysis" Of Driver
             Logs Does Not Alter The Fact That Their Break
             Claims Are Not Suitable For Certification Under Rule
             23(b)(3) ............................................................................. 19

        7.     Individualized Questions About The Number Of
             Hours Drivers Worked In California Also Preclude
             Certification Of Plaintiffs' Break Claims ........................... 21

B.    The Court Should Not Certify A Rule 23(b)(2) Class...................24

C.    Plaintiffs Lack Standing To Assert Reserve Account Claims.......25

IV.        CONCLUSION ..............................................................................25

# **TABLE OF AUTHORITIES**

## **Cases**

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997)...................................12

*Am. Honda Motor Company, Inc. v. Allen,* 600 F.3d 813 (7th Cir. 2010) ............................................................................................................20

*Anderson v. Mt. Clemons Pottery Co.,* 328 U.S. 680 (1946) ................... 15-16

*Blackwell v. Skywest Airlines, Inc.,* 245 F.R.D. 453 (S.D. Cal. 2007) ...................16, 18

*Brown v. Fed. Express Corp.*, 249 F.R.D. 580 (C.D. Cal. 2008) ..................... 15-16, 18

*Bryant v. Service Corp. Intern.,* 2001 WL 855815 (N.D. Cal. March 9, 2011) ........................................................................................18

*Campion v. Old Republic Home Protection Co.,* 2011 WL 42759 (S.D. Cal. Jan. 6, 2011)...........................................................................24

*Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993)...........................20

*Dukes v. Wal-Mart, Inc.,* 509 F.3d 1168 (9th Cir. 2007)...........................13, 24

*Dunbar v. Albertson's, Inc.* (2006) 141 Cal.App.4th 1422 ..........................20

*Evans v. Lasco Bathware, Inc.,* 178 Cal.App.4th 1417 (2009) ....................21

*Forrand v. Federal Express Corp.*, 2009 WL 648966 (C.D. Cal. Feb. 18, 2009), *aff'd in part, reversed in part, and stayed*, 2010 WL 4269401 (9th Cir. Oct. 26, 2010) ....................................................21

*Friend v. Hertz Corp.,* 2011 WL 750741 (N.D. Cal. February 24, 2011) ...................................................................................... 18-19

*Garcia v. Sun Pacific Farming Cooperative,* 2008 WL 2073979 (E.D. Cal. May 14, 2008).........................................................................18

*Goldsby v. Adecco, Inc.,* 2009 WL 262216 (N.D. Cal. February 4, 2009) ........................................................................................................16

*Guy v. Iasco,* 2004 WL 1354300 (Cal. App. 2004).....................................23

*Helm v. Alderwoods Group, Inc.,* 2011 WL 855810 (March 9, 2011).........................18

*Hernandez v. Chipotle Mexican Grill, Inc.*, 2010 WL 3789012 (Cal. Ct. App. Sep. 30, 2009) ..........................................................................16

*In re: Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305 (3rd Cir. 2009) ........................................................................................................13

*In re: Lamps Plus Overtime Cases,* 2011 WL 1759625 (Cal. Ct. App. May 10, 2011).................................................................16

*In re: Paxil Litig.,* 218 F.R.D. 242 (C.D. Ca. 2003).........................25

*In re: Wells Fargo Home Mortgage Overtime Pay Litig.,* 571 F.3d 953 (9th Cir. 2009)...........................................................14

*Jasper v. C.R. England, Inc.,* 2009 WL 873360 (C.D. Cal. March 30, 2009)....................................................................14, 16

*Jimenez v. Domino's Pizza, Inc.,* 238 F.R.D. 241 (C.D. Cal. 2006) ............21

*Kenny v. Supercuts, Inc.,* 252 F.R.D. 641 (N.D. Cal. 2008).............15-16, 18

*Lanzarone v. Guardsmark Holdings, Inc.,* 2006 WL 4393465 (C.D. Cal. 2006)..................................................................18

*Marlo v. United Parcel Service, Inc.,* 251 F.R.D. 476 (C.D. Cal. 2008) ...................................................................13

*Murphy v. Kenneth Cole, Inc.,* 155 P.3d 284 (Cal. 2007) ....................22

*Poulos v. Ceasars World, Inc.,* 2002 WL 1991180 (D. Nev. June 25, 2002) ....................................................................19

*Priyanto v. M/S Amsterdam,* 2009 WL 175739 (C.D. Cal. 2009)..............23

*Regan v. Qwest Communications Int'l, Inc.,* 2010 WL 3941471 (E.D. Cal. Oct. 5, 2010).............................................................25

*Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584 (7th Cir. 1993).......................................................................18

*Sarviss v. General Dynamics Information Technology, Inc.,* 663 F.Supp.3d 883 (C.D. Cal. 2009) .............................................21-22

*Stout v. Byrider,* 228 F.3d 709 (6th Cir. 2000) .............................18

*Tidewater v. Marine Western, Inc.,* 927 P.2d 296 (Cal. 1996)................22

*Tidenberg v. Bidz.com, Inc.,* 2009 WL 605249 (C.D. Cal. 2009) .............23

*Walsh v. Nev. Dep't of Human Res.,* 471 F.3d 1033 (9th Cir. 2006) ..........25

*Warth v. Seldin,* 422 U.S. 490 (1975)...................................25

*Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180 (9th Cir. 2001) .........12

## **Statutes**

49 C.F.R. § 395.3 .......................................................7

49 C.F.R. § 395.8 .......................................................7

49 C.F.R. § 395.8(k) ........................................................................... 2

Cal. Labor Code § 512(a) ............................................................... 21-22

## Rules

Fed.R.Civ.P. 23(b)(2) ...................................................................... 3, 24

Fed.R.Civ.P. 23(b)(3) ................................................................ 1, 12, 18

## Other

*Advisory Comm. Notes to 1966 Amendment, subdivision (b)(2)* .................................. 24

*Cal. Division of Labor Standards Enforcement Manual* § 43.6.11 ............................. 22

*Cal. Industrial Welfare Commission Transportation Wage Order
No. 9-2001* ............................................................................ 8, 19

*Chen, Wiseman, Cal. Practice Guide: Empl. Litig.* § 11:139 ...................................... 22

Defendant, C.R. England, Inc. ("England"), respectfully submits its Opposition to Plaintiffs' Renewed Motion for Class Certification (the "Renewed Motion").

## I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

The parties agree that the following points govern the Court's decision on certification of Plaintiffs' meal and rest break claims under Rule 23(b)(3):

- First, the Court may not certify Plaintiffs' meal and rest break claims under Rule 23(b)(3) if individual class members must testify in support of their individual claims.  Instead, the Court may only certify these claims if they can be established on the basis of reliable *representative* evidence.

- Second, the *mere existence* of generally-applicable company policies cannot establish liability.  Rather, liability requires proof that generally-applicable policies *violated California's meal and rest break rules*.

- Third, given the first two points, the Court may only certify Plaintiffs' meal and rest break claims if Plaintiffs can show how England's generally applicable policies prevented meal and rest breaks through reliable representative evidence and *without the need for testimony from individual class members*.  Determining whether Plaintiffs can do this does not entail an examination of the relative merits of the parties' positions (i.e., who will win).  The issue is simply whether Plaintiffs' break claims can be resolved on the basis of common evidence.

Plaintiffs embrace these points, explaining that their "theory of liability" with respect to meal break violations[1] is that "the policies and operational practices imposed by [England] on all of the class members have the intent *and practical effect of preventing them from being 'relieved of all duties'* during the period meal breaks required by" California law.  *See Plaintiffs' Motion* at 8 (emphasis added).  Plaintiffs assure the Court that they can prove England's "policies and operational practices"

---

[1] Plaintiffs offer no facts or argument in favor of certification of their rest break claims except to assert, without explanation, that those claims should be certified for the same reason as their meal break claims.  This is incorrect for reasons discussed below.

prevented class members from taking meal breaks "through either a representative statistical sampling or a comprehensive survey of the meal break records contained in the class-wide electronic database of DOT driver logs." *Id.* at 10.   According to Plaintiffs, this evidence "will obviate the need for individualized proof concerning missed breaks," and no class members will have to testify. *Id.* at 18.   Plaintiffs rely exclusively on the analysis of the driver logs and identify no other class-wide common proof.   For the reasons discussed below, and in the report of expert forensic data analyst Robert Crandall (the "Crandall Report") attached hereto as *Ex. FF* Plaintiffs analysis is flawed, and the claims of the class cannot be resolved without taking testimony from every putative class member.   The break claims therefore cannot be certified.

First, the driver logs that are available (many logs predating the filing of this case have been discarded in accordance with federal law, which obligates carriers to retain driver logs for just six months, *see* 49 C.F.R. § 395.8(k)) show that Plaintiffs and putative class members *were able to take breaks*.   Plaintiffs and numerous putative class members readily acknowledge this.   But the fact logs reflect only a small number of breaks does not constitute reliable, foundationally firm evidence that drivers indeed missed breaks because *drivers frequently do not record their breaks on their logs*.   Whether any class member missed a break on any given day simply cannot be determined solely from the logs, the *only* common evidence Plaintiffs identify. Rather, the only way to know if a class member missed a break (or for that matter had or shortened meal break) on any given day is to *ask the putative class member*.

Moreover, Plaintiffs' theory ignores the undisputed fact that *England cannot be liable simply because class members missed meal breaks*.   England can only be liable if class members missed breaks *because of the policies Plaintiffs have identified*. Thus, even if the logs of putative class members were a reliable source of evidence of the total number of breaks that were missed, the logs say nothing about *why breaks were missed in the first place*.   Plaintiffs claim they missed breaks due to England's

policies.  Other drivers have testified that they missed breaks for reasons *completely unrelated to* the policies Plaintiffs identify.  England does not dispute that drivers may have occasionally missed breaks and cannot discount the possibility that some drivers may have missed some breaks due to tight scheduling.  But the only way to know (1) whether any class member missed (or had shortened or delayed) breaks, and (2) whether this was a matter of personal choice (in which case there is no violation), because of an England policy (in which case there could be a violation), or because of some other reason (in which case there may or may not be a violation depending on the circumstances of each individual situation) is to *ask the putative class member*. The need to conduct class-member by class-member mini-trials on these critical issues precludes certification.  Numerous courts have denied certification for the same reasons.

Nothing in Plaintiffs' purported "statistical analysis" changes this result. Plaintiffs' counsel's "expert reports" lacks the foundational requirements for admissibility.[2]  Moreover, it utterly fails to account for, among other things, the facts that (1) driver logs do not show all breaks that were taken, and (2) some drivers missed breaks for reasons unrelated to any England policies.[3]

---

[2] England is contemporaneously filing an objection to Plaintiffs' counsel's proffer of this inadmissible "expert" testimony.  Leaving aside the uncertainty regarding Plaintiffs' counsel's qualifications to conduct the statistical analysis contained in his declaration, nothing in the record would provide this Court with any basis on which to conclude that the driver-created logs can be used as a proxy for whether, on any given day, any particular driver took or missed a break and, if so, why.

[3] Plaintiffs also seek certification of all of their claims under Rule 23(b)(2), but they fail to offer any argument that would allow this Court to conclude that they are seeking predominately injunctive relief as opposed to money damages, rendering Rule 23(b)(2) certification inappropriate.  Plaintiffs also lack standing to pursue claims for themselves or for putative class members relating to deductions to fund reserve accounts.  Finally, Plaintiffs' proposed class definitions remain flawed because the Court will have to undertake fact-specific, individualized inquiries to determine who is a member of the various classes Plaintiffs propose.

## II. FACTS

### A. England And Plaintiffs

England employs five categories of drivers who reside in California: One-Way drivers, who are over-the-road ("OTR") drivers taking loads to and from California to destinations across the country and are frequently on the road for weeks at a time. Local One-Way drivers who make local pick-up and deliveries of loads for One-Way drivers; Dedicated Local drivers who service specific shippers, such as Coca Cola; Dedicated Line Haul drivers who also work hauling shipments for specific accounts (such as Coca Cola) longer distances than the Local Coke drivers; and Intermodal drivers who haul loads to and from railheads in Los Angeles and Stockton. *Declaration of Kirk Freimuth* ("Freimuth Decl. I"), ¶¶ 3-5, attached as *Ex. A*. England employed Jasper as a Local Coke driver for approximately seven months from August 2007 through February 2008. *Declaration of Barrette Jasper* ("Jasper Decl."), ¶ 2, attached as *Ex. J* to *Renewed Motion*. Cook is a current employee driver of England and has been employed since November, 2006. *Declaration of Darrin Cook* ("Cook Decl."), ¶ 1, attached as *Ex. K* to *Renewed Motion*. During his employment, Cook worked as an OTR (i.e., one-way) driver for a few months, as a Dedicated Line Haul driver for the Walmart and Coke accounts, and as a Local Coke driver. *Id.*, ¶ 2.

### B. Meal and Rest Breaks

**England's break policy**. England advises its drivers who go through orientation in California of California's meal and rest break rules and places posters disclosing those requirements in England's California facilities. *Deposition of Kirk Freimuth* ("Freimuth Dep.") at 127-28, 133, attached as *Ex. B*; *Declaration of Gary Thompson* ("Thompson Decl."), ¶ 3, attached as *Ex. C*; *Deposition of William Ackner* ("Ackner Dep.") at 27:6-19, 127:15-129:6, attached as *Ex. D*; *Declaration of Dennis Parrotte* ("Parrotte Decl."), ¶ 7, attached as *Ex. E*; *Declaration of Rickey Fraley*

("Fraley Decl."), ¶ 12, attached as *Ex. F*.  England's drivers accordingly understand California's break rules.  *See Declaration of Cameron Phipps* ("Phipps Decl."), ¶ 4, attached as *Ex. G*. While England advises drivers of California's break rules, it assures drivers that they may take breaks *in excess of* California's requirements as necessary. Specifically, drivers are advised that they may take two one-hour breaks and one two-hour break per day.  *See Freimuth Dep.* at 119-121; *Ackner Dep.* at 26:16-27:5; *Thompson Decl.*, ¶ 2.  England provides its drivers with cards setting out these break allowances.  *See Ackner Dep.* at 26:16-27:5; *Deposition of Andrew Anderson* ("Anderson Dep.") at 41:6-42:2, attached as *Ex. H*; *Phipps Decl.*, ¶ 4; *Deposition of Barrette Jasper* ("Jasper Dep.") at 20-22, attached as *Ex. I*.

**Drivers have the discretion to schedule their own breaks**.  Because of the dynamic nature of the trucking business and the many variables that can affect a driver's availability at any given time, England does not assign drivers a daily delivery schedule.  Rather, England schedules only one delivery for each local driver, and assigns additional shipments to the next available truck in the best position to take a load. *See Ackner Dep.* at 37:12-19, 63:13-64:21, 68:11-69:9, 72:14-23; *Supplemental Declaration of Rickey Fraley* ("Suppl. Fraley Decl."), ¶ 6, attached as *Ex. J*.  For the same reasons, it is impractical for England to schedule meal or rest breaks in advance. *Jasper Dep.* at 58-59; *Fraley Decl.*, ¶¶ 3, 10; *Declaration of Lewis Crumby* ("Crumby Decl."), ¶ 7, attached as *Ex. K*; *Declaration of Mark Fleming* ("Fleming Decl."), ¶¶ 3-4, 7, 12, attached as *Ex. L*; *Ackner Dep.* at 37:12-19.  Drivers therefore are given the discretion to schedule their own meal and rest breaks as they fit in with their activities during the day.  *Ackner Dep.* at 29:16-17; *Supplement Declaration of Kirk Freimuth* ("Suppl. Freimuth Decl."), ¶ 5, attached as *Ex. M*; *Jasper Dep.* at 84-85; *Parrotte Decl.*, ¶¶ 3-6; *Fraley Decl.*, ¶¶ 3-4, 8-11; *Declaration of Vance Vogel* ("Vogel Decl."), ¶¶ 4-6, attached as *Ex. N*; *Crumby Decl.*, ¶¶ 2-3, 5-7; *Declaration of Kevin McClure* ("*McClure Decl.*"), ¶¶ 3-7, attached as *Ex. O*; *Fleming Decl.*, ¶¶ 3-4, 6-7, 11-12; *Declaration of Krystee Leggette* ("Leggette Decl."), ¶ 3, attached as *Ex. P*.

**Drivers take breaks several ways**.  When drivers wish to take breaks during their work day, they can do one of several things.  They can simply stop at a parking lot, restaurant, fueling station, or similar location when they have sufficient time while in transit with a shipment.  *See Ackner Dep.* at 33:19-25, 43:13-24, 44:7-12, 65:2-18, 90:13-93:12; *Declaration of Michael Gluba* ("Gluba Decl."), ¶ 4, attached as *Ex. Q*; *Phipps Decl.*, ¶ 8.  They can take breaks at England's customers' facilities before, during, and after their trucks are loaded or unloaded (England drivers do not load or unload their vehicles and generally do not need to stay with vehicles during the loading and unloading process).  *See Ackner Dep.* at 43:25-44:6, 53:15-20, 52:2-3, 95:19-21, 95:25-97:12; *Declaration of Cesar Beltran* ("Beltran Decl."), ¶ 8, attached as *Ex. R*; *Suppl. Fraley Dec.*, ¶ 10; *Gluba Decl.*, ¶¶ 4-5; *Supplemental Declaration of Kevin McClure* ("Suppl. McClure Dec."), ¶ 6, attached as *Ex. S*; *Phipps Decl.*, ¶¶ 8, 11.  Drivers can also take breaks between shipments.  *See Suppl. Fraley Decl.*, ¶ 9.  Drivers do not have to request another load by placing an "empty call" to their dispatcher immediately after completing a load.  Rather, they can (and are encouraged to) delay placing their empty calls if they need to take breaks.  *See, e.g., Ackner Dep.* at 30:2-15, 37:15-19, 38:4-9, 65:2-18, 140:3-21; *Deposition of Kevin McClure* ("McClure Dep.") at 22:2-17, attached as *Ex. T*; *Deposition of Rickey Fraley* ("Fraley Dep.") at 13:5-15, attached as *Ex. U*; *Deposition of Lewis Crumby* ("Crumby Dep.") at 73:12:22, attached as *Ex. V*; *Suppl. Fraley Decl.*, ¶ 9; *Declaration of Kevin Smith* ("Smith Decl."), ¶ 5, attached as *Ex. W*.  Drivers may also call their driver managers and ask for breaks.  *Ackner Dep.* at 32:11-15, 33:8-18; *Phipps Decl.*, ¶ 13.  And drivers may decline to accept dispatched loads if they need to take breaks.  *Ackner Dep.* at 37:20-38:12, 44:13-18, 63:13-64:21, 70:24-71:21.  In that case, the load is simply assigned to the next available driver.  *Ackner Dep.* at  37:20-25, 65:2-18, 72:14-23.  Drivers are not disciplined for this.  *Ackner Dep.*, 72:24-73:10.

**Parking to take breaks**.  Drivers may leave their vehicles where it is safe to do

so, such as customer locations and parking lots.[4]  *See Jasper Dep.* at 86:13-19; *McClure Dep.* at 23:3-25, 69:13-23, 74:3-10, 16-24; *Deposition of Dennis Parrotte* ("Parrotte Dep.") at 73:16-21, 87:20-88:24, 89:14-25, attached as *Ex. X*; *Crumby Dep.* at 60:9-12, 21-11; 61:12-21; 69:13-21; *Fraley Dep.* at 27:6-24, 29:8-15; *Deposition of John Santiago* ("Santiago Dep.") at 71:22-73:25, attached as *Ex. Y*; *Deposition of Willis Chambers* ("Chambers Dep.) at 99:25-102:16, attached as *Ex. Z*; *Renewed Motion*, Exhibit B (Proc. Manual at 82-82 (CRE00198-99)); *Beltran Decl.*, ¶ 11; *Suppl. Fraley Decl.*, ¶ 10; *Gluba Decl.*, ¶ 5; *Suppl. McClure Decl.*, ¶ 8; *Phipps Decl.*, ¶ 11.

**Fuel Stops**.  England does not schedule fuel stops.  It merely specifies the fuel vendors to be patronized when drivers stop for fuel because of the discount it gets on the purchases.  *See Deposition of Mark Fleming* ("Fleming Dep.") at 133:9-15, attached as *Ex. AA*; *Renewed Motion*, Exhibit C (Policy Manual (CRE00279)).

**Recording breaks on driver logs**.  Under the federal Hours of Service ("HOS") rules, the entirety of every day a truck driver works for a motor carrier is recorded, and each day's time is allocated to one of the following four categories: on-duty driving, on-duty not driving, off-duty, and "sleeper berth" (a category capturing time spent in a truck's sleeping quarters).  *See* 49 C.F.R. § 395.8.  The HOS rules generally provide, subject to other limitations, that drivers may not drive more than a total of 11-hours within a 14-hour on-duty period.  49 C.F.R. § 395.3.  Time logged as "on-duty not driving" does not count against the 11-hour driving limit, and time

---

[4] England does not require drivers to remain with their trucks at all times.  England prohibits the dropping of loaded trailers (that is, disconnecting a loaded trailer from a tractor) and leaving them anywhere other than secure yards.  *Deposition of Robert Fine* ("Fine Dep.") at 25:15-26:6, attached as *Ex. BB*; *Renewed Motion*, Exhibit B (Procedure Manual (CRE00189)).  England's Policy Manual states the following regarding parking: "While the truck is parked and unattended, drivers shall lock their vehicles and have all windows in the closed position in urban areas, at truck stops, and rest areas."  *Renewed Motion*, Exhibit C at 175 (Policy Manual (CRE00291)).

logged as "off-duty" or in the sleeper berth does not count against the 14-hour total on-duty period. *Id.* England has used an electronic log system to track this time for approximately two years. *Ackner Dep.* at 151:12-18. Prior to that time, drivers logged their time by hand on driver log forms. *Id.* With the electronic log system, the input of information is somewhat automated in that, when a truck is moving, the system records the time as "driving," and when a truck is stationary, the system automatically records the time as "on-duty, not driving." *Id.* at 150:17-151:6. If a driver wants to change his duty status to "off duty" when the truck is stationary, such as when he is taking an off-duty meal break, he must do so manually. Otherwise, the time will be logged as "on-duty, not driving." *Id.* at 185:13-186:6.

When drivers take meal breaks, they may be logged as "off-duty" or "sleeper berth" depending on how the driver takes the break. Rest breaks, however, may be taken while on duty and do not need to be logged. Cal. Industrial Welfare Commission Transportation Wage Order No. 9-2001 § 12(a) While meal breaks may be logged, drivers frequently do not change their duty status from "on-duty, not driving" because they are being paid for the time (their compensation covers all on-duty time) and because they generally do not need to conserve the total amount of on-duty time they have available to them. *See, e.g., Beltran Decl.*, ¶¶ 6-7; *Suppl. McClure Decl.*, ¶ 12; *Suppl. Fraley Dec.*, ¶7; *Gluba Dec.*, ¶ 7; *Smith Decl.*, ¶¶ 6-7; *Phipps Decl.*, 9-10; *McClure Dep.* at 27:9-25; *Parrotte Dep.* at 36:9-15; 36:20-23; 90:1-4; *Fraley Dep.* at 92:25-93:21; 94:20-24.

**Drivers have time to take breaks**. As noted below, drivers including Plaintiffs acknowledge that they have time to take breaks and do so. *See, e.g., Suppl. Fraley Decl.*, ¶ 4. An example of a day worked by Plaintiff, Darrin Cook ("Cook"), illustrates this point. On March 3, 2011, Cook drove from California to Nevada, making stops in Las Vegas for a delivery and in Henderson, Nevada for a pick-up. *See Ackner Dep.* at 47-58 and *Ackner Dep. Exh. 4*, attached as part of *Ex. D*. He left Chino, California at 12:30 p.m. and arrived in Las Vegas at 5:30 p.m., 30 minutes

ahead of his 6:00 p.m. scheduled arrival.  *Id.* at 50:1-25.  His log for the day shows he took a seven minute break but he had time to take at least a 10 minute break.  *Id.* at 52:13-53:14 and *Dep. Ex. 4*.  He spent 45 minutes at the customer's location, which gave him enough time to take a 30 minute break in the customer's break room or at any nearby restaurant or truck stop.  *Id.* at 52:2-3, 53:15-20.  His log, however, does not record a break at that time.  *Id.*, *Dep. Ex. 4*.  Cook then took another trailer to a customer located 10 miles away in Henderson, Nevada, arriving at 6:30 p.m., two hours in advance of his 8:30 p.m. appointment. *Id.* at 53:23-55:21.  Cook could have taken that time for breaks. *Id.* at 55:22-56:7.  His log, however does not indicate that he took a break. *Id.* at 56:8-13 and *Dep. Ex. 4*.  Cook was to return to the Los Angeles area that night, but had no delivery return deadline and could have taken a break at any time during the remainder of the evening.  *Id.* at 57:10-20.  His log, however, only shows a six-minute break in Barstow, California.  *Id.* at 59:2-5.  During the course of the day, Cook could have taken a total of at least five 30-minute breaks without compromising his delivery schedule.  *Id*. at 58:23-59:1.

**Driver testimony about breaks**.   Plaintiff, Barrette Jasper ("Jasper"), acknowledged that England provided him with a Driver Certification Card outlining England's break policy before he hauled a single load for England.  *Jasper Dep.* at 20-22.  It was his understanding that that policy applied to all England drivers, including him.  *Id.* at 22-23.   No one told him not to take breaks; he took them when he had the chance.  *Id.* at 25:24-26:1; 26:9-27:14.  When he did so, he would take naps, rest, or listen to music.  *Id.* at 35:22-37:12.  He would use the restroom and vending machines at delivery locations.  *Id.* at 41:12-42:3.  Between loads he would talk on the phone, smoke cigarettes, or take naps.  *Id.* at 45:25-46:6.  Sometimes these between-load breaks lasted 30 minutes.  *Id.* at 46:10-17.  Sometimes when Jasper had more time than he needed to make a delivery, he would just go to sleep.  *Id.* at 48:5-20.  On some days, Jasper worked fewer than five hours, but decided to go home instead of taking a break at the conclusion of his work.  *Id.* at 65:2-66:1.  He does not know whether or

why any other driver missed a meal or rest break. *Id.* at 111, 145-149.  Jasper testified that the only way to find out whether any other driver took a meal or rest break, and if not, why, was to talk to that driver. *Id.* at 163, 165-166.

Cook said the same things. *Deposition of Darrin Cook* ("Cook Dep.") at 45, 105-09, 113-15, 122, 125-26, 149, 194-95, 206, attached as *Ex. DD*.  While Cook testified that he missed breaks, he explained that "there [were] probably a million different answers to that question," including the fact that he did not want to stop and for personal reasons, such as finishing work early. *Id.* at 133:3-24; 135:24-136:2; 142:18-21; 143:20-25; 145:16-19.

Other drivers reported similar experiences.  For example, Kevin McClure ("McClure") testified that he was informed that he could take two one-hour breaks and one two-hour break. *McClure Dep.* at 13:9-13.  He has time to take breaks at customer locations, *id.* at 14:9-14; 21:23-22:1, and takes a break for breakfast every day. *Id.* at 18:14-25.  He takes subsequent breaks later in the day ranging from 20 minutes to an hour. *Id.* at 19:10-20:13; 25:5-13; 25:16-20.  Sometimes he takes a break while his vehicle is being loaded, a process that could take more than two hours. *Id.* at 70:20-71:16.  He even ate lunch with Jasper. *Id.* at 46:3-25.

Dennis Parrotte ("Parrotte") has the same understanding about England's break policy. *Parrotte Dep.* at 45:22-46:20.  During loading, he sleeps, reads, goes for walk, or goes to a restaurant. *Id.* at 73:16-21.  He also takes meals at restaurants and truck stops. *Id.* at 89:14-25.

Lewis Crumby ("Crumby") has never missed a meal break and has never worked more than four hours without stopping for a meal. *Crumby Dep.* at 14:20-22; 15:23-16:1.  Sometimes he takes breaks at a customer's cafeteria, and sometimes he will stop at a restaurant. *Id.* at 32:8-25; 60:21-22; 61:12-21.  His breaks range from one to three and one-half hours. *Id.* at 33:15-34:2; 36:2-6.

Rickey Fraley ("Fraley") takes breaks even when he is running late. *Fraley Dep.* at 10:4-15.  He takes three breaks each day of at least 30 minutes. *Id.* at 10:16-

25; 11:1-6; 14:19-25.

Cesar Beltran ("Beltran") has worked as an OTR driver and as a dedicated local Coke driver. *Beltran Decl.*, ¶ 3. As an overt-the-road driver, he took breaks when he needed them. *Id.*, ¶ 5. He preferred to take 10 to 15 minutes, but could have taken longer ones if he wanted one. *Id.* As a local driver, Beltran takes breaks everyday. *Id.*, ¶ 6. For example, on May 10, 2011, Beltran ate breakfast in his truck while it was being unloaded. *Id.*, ¶ 8. He could have taken another break but decided he was ready to take another load and sent his empty call message to his manager. *Id.* Later that day, he took two additional 20 minutes breaks. *Id.*, ¶ 9. He could have taken longer breaks, but he decided he was ready to begin work again. *Id.*

Michael Gluba ("Gluba") as worked as both an OTR driver and dedicated local Coke driver. *Gluba Decl.*, ¶¶ 4-5. As an OTR driver, he would take meal and rest breaks when he stopped for fuel, getting something to eat and taking a shower. *Id.*, ¶ 4. As a local driver, Gluba took at least one meal break and three to seven shorter rest breaks each day. *Id.*, ¶ 5.

Cameron Phipps ("Phipps") worked as an OTR driver, a dedicated line-haul driver, and as a dedicated Coke local driver. He took meal and rest breaks in each of these positions. *Phipps Decl.*, ¶¶ 5-8. Kevin Smith ("Smith") has always taken at least three ten minute rest breaks and two thirty minute or longer meal breaks each day working for England as either an OTR driver or a Coke line-haul or dedicated driver. *Smith Decl.*, ¶ 5.

Even Plaintiffs' declarants acknowledged opportunities to take breaksChambers testified that England advised him he could take breaks and that he would take breaks to eat. *Chambers Dep.* at 86:4-87:20. Chambers would wait for hours at a customer's location waiting for his truck to be loaded, sometimes spending his time in the customer's break room where he would sit, relax, and watch TV. *Id.* at 94:7-95:13. Other times he would go to a truck stop during the loading process. *Id.* at 93:24-94:6. While he sometimes missed breaks, the reasons varied. *Id.* at 115:12-14.

Santiago testified that he sometimes stopped to take a nap break for 15 to 30 minutes. *Santiago Dep.* at 71:22-73:25. He also stopped to use the restroom. *Id.* at 125:21-126:6. Santiago, however, did not consider these rest breaks. *Id.* at 78:15-79:23; 125:21-126:6. Santiago testified that he would sometimes drive for as many as seven to eight hours without stopping. But he did not attribute this to any England policies. Rather, he attributed this to his personal commitment to superior performance, stating "[t]his is how I conduct my business. This is the kind of driver I'm going to be: on time all the time," in contrast to drivers who "are not on that page, not in that mode," because, through that commitment, he could "get the most hours, and … get to create a situation for a more comfortable lifestyle … It's just how you choose you want to be." *Id.* at 74:1-21; 75:11-76:14.

## III. ARGUMENT

### A. Plaintiffs' Break Claims Cannot Be Certified Under Rule 23(b)(3)

#### 1. Rule 23(b)(3) Demands Common Proof

To meet their burden under Rule 23(b)(3), Plaintiffs must show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Under this standard, class certification will only be appropriate if Plaintiff can establish the claims of all absent class members through representative evidence he will offer at trial. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Class certification is impermissible, however, if evidence must be taken from individual class members to resolve their claims. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001).

To determine whether Plaintiffs can prove the claims of class members through common evidence (in which case class certification is appropriate) or whether the Court must hear evidence from individual class members (in which case class certification is not appropriate), the Court *must* (1) identify the elements of the claims

Plaintiff intends to pursue for the class and (2) examine the evidence Plaintiff intends
to introduce in support of those elements.  *See In re Hydrogen Peroxide Antitrust
Litig.*, 552 F.3d, 311, 311-312 (3d Cir. 2009).   Only by doing so can the Court
"formulate 'some prediction as to how specific issues will play out in order to
determine whether common or individual issues predominate in a given case.'"  *See
Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 593 (9th Cir. 2010), *cert. granted*.[5]

It is *Plaintiffs'* burden to identify the evidence they intend to use to establish the
claims of all absent class members and to show how that evidence is common.  *See
Marlo v. United Parcel Service, Inc.*, 251 F.R.D. 476, 483 (C.D. Cal. 2008)
Determining whether Plaintiffs have identified common evidence to prove the claims
of class members will not require in an impermissible examination of the merits of
Plaintiffs' claims.  *See Dukes*, 603 F.3d at 583 (district courts may inquire into the
merits of the case to satisfy themselves that the Rule 23 requirements have been met).

> **2.   Class certification must be denied unless Plaintiffs can show
> how England's generally applicable policies prevented meal
> breaks with common evidence and *without the need for
> testimony from individual class members*.**

Plaintiffs claim that various purported policies and practices prevented class
members from taking breaks, including (1) dispatching and routing drivers without
scheduling breaks, (2) requiring drivers to remain at a customer's location on duty
during loading and unloading, (3) prohibiting parking on roadways, (4) requiring
drivers to remain with their trucks at all times, and (5) immediately re-dispatching
drivers on new loads without allowing time for breaks.  *See Renewed Motion* at 13-15.
For the reasons discussed above in Section II, these contentions simply cannot  be
reconciled with the experiences and testimony of the putative class.  But even if there

---

[5] England proposes that the Court hold an evidentiary hearing to assist with its
determination of whether the claims of absent class members can be established
through common evidence, or whether individual class members must testify.

were such policies, their mere existence is insufficient in itself to establish liability or to support class certification. Rather, as this Court explained in its ruling on Plaintiffs' first Motion for Class Certification, Plaintiffs "must demonstrate that [England's] policies *deprived them of ... breaks*." *See Jasper v. C.R. England, Inc.*, 2009 WL 873360, * 5 (C.D. Cal. Mar. 30, 2009) (citing numerous cases). Thus, liability requires proof that generally-applicable policies violated California's meal and rest break rules, and certification requires a showing that the impact of England's policies on the ability of class members to take breaks can be determined on the basis of common, representative evidence and without the need for testimony from individual class members. *See In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009) (district court may not certify on the basis of common policies if it disregard "the existence of other potential individual issues that may make class treatment difficult if not impossible.").

Plaintiffs do not dispute any of this. And they agree that these inquiries do not involve an impermissible inquiry into the merits of their claims. *See Renewed Memorandum* at 12 ("The Court, of course, is not being asked to make findings as to these class-wide allegations."). Rather, Plaintiffs acknowledge that the issue is whether they can "produce common evidence at trial which is capable of supporting their theory of liability." *Id.* They assure the Court that they can prove England's "policies and operational practices" prevented class members from taking meal breaks "through either a representative statistical sampling or a comprehensive survey of the meal break records contained in the class-wide electronic database of DOT driver logs." *Id.* at 10. According to Plaintiffs, this evidence "will obviate the need for individualized proof concerning missed breaks," and no class members will have to testify. *Id.* at 18. Plaintiffs are wrong.

### 3. The driver logs do not prove that breaks were missed.

Plaintiffs claim the driver logs of putative class members show all of the breaks that drivers missed and that missed breaks automatically create liability. While the

logs reflect only a relatively small number of breaks in relation to the time drivers had to take them, this fact does not prove that breaks were missed because drivers frequently do not record their breaks on their logs.

For example, McClure testified that he recorded only approximately 25-30% of the breaks he took. *McClure Dep.* at 27:9-25. Without his testimony about the reliability of the records he created, his logs would improperly show him on-duty even though he was actually taking breaks. *Id.*

Other drivers similarly failed to log their breaks. Parrotte never logged his meal or rest breaks as off-duty time. *Parrotte Dep.* at 36:9-15; 36:20-23; 90:1-4. Fraley likewise did not record his breaks as off-duty time. *Fraley Dep.* at 92:25-93:21; 94:20-24. Chambers cannot recall how often he recorded breaks, estimating that he may have done so 50% of the time. *Chambers Dep.* at 108:10-110:13. Many others didn't bother to record their breaks because it had no effect on the total hours of service available to them under the HOS rules. *Beltran Decl.*, ¶¶ 6-7; *Suppl. McClure Decl.*, ¶ 12; *Suppl. Fraley Decl.*, ¶7; *Gluba Decl.*, ¶ 7; *Smith Decl.*, ¶¶ 6-7; *Phipps Decl.*, ¶¶ 9-10. All agree that, contrary to Plaintiffs' assertions, the logs do not necessarily show whether breaks were taken or missed. *Id.*

Because drivers took breaks but did not record them on their logs, there is no basis upon which to conclude that the absence of entries relating to breaks on driver logs demonstrates that breaks were not taken. Rather, the only way to know if a class member missed a break on any given day is to ask the class member. *See*, *e.g.*, *Beltran Decl.*, ¶¶ 6-7; *Suppl. McClure Decl.*, ¶ 12; *Suppl. Fraley Decl.*, ¶7; *Gluba Decl.*, ¶ 7; *Smith Decl.*, ¶¶ 6-7; *Phipps Decl.*, ¶¶ 9-10. The need for class-member by class-member mini-trials on this issue precludes certification. *See*, *e.g.*, *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 646 (N.D. Cal. 2008); *Brown v. Federal Express Corp.*, 249 F.R.D. 580, 586-587 (C.D. Cal. 2008).

Moreover, the fact that many drivers did not record all of their breaks does not create a presumption in favor of class certification. The case of *Anderson v. Mt.*

*Clemons Pottery Co.* 328 U.S. 680, 687-688 (1946), upon which Plaintiffs rely, does not support their position.  *Anderson*, which involved federal minimum wage claims, expressly held that, even where records are missing, a plaintiff must *still* come forward with "sufficient evidence to show the amount and extent of … work as a just and reasonable inference." *Id.*  Thus, the fact that driver logs are not perfect records of missed breaks does not eliminate Plaintiffs' burden to show both that breaks were in fact missed and that breaks were missed *because of England's policies* (something that no logs could say, as noted in the following section).  Courts frequently deny certification of break claims despite the absence of these kinds of records.  *See In re Lamps Plus Overtime Cases*, 2011 WL 1759625, at *10 (Cal. Ct. App. May 10, 2011)(court denied certification in spite of some incomplete records, finding failure of commonality because of variance in whether breaks taken or not and also finding that there still existed a question of whether employees missed breaks or just failed to record them); *Goldsby v. Adecco, Inc.*, 2009 WL 262216, at *4 (N.D. Cal. Feb. 4, 2009)(records did not depict whether meal period taken or not so records not of much evidentiary value).  In fact, some courts have noted that the absence of records of breaks, when those records would have been generated by class members, argue *against* certification.  *See Hernandez v. Chipotle Mexican Grill, Inc.*, 2010 WL 3789012, at *9 (Cal. Ct. App. Sept. 30, 2010) (publication withdrawn pending review of related cases); *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 467 (S.D. Cal. 2007); *Brown*, 249 F.R.D. at 587; *Kenny*, 252 F.R.D. at 646.

### 4.    Even if driver logs showed all missed breaks, they do not show *why* breaks were missed.

Plaintiffs' theory of class-wide liability must be rejected for another reason: it ignores the undisputed fact that *England cannot be liable simply because class members missed meal breaks*.  As this Court has already determined, England can only be liable if class members missed breaks *because of the policies Plaintiffs have identified*. *See Jasper*, 2009 WL 873360 at *5.  Plaintiffs claim they missed breaks

due to England's policies.  Other drivers have testified that they missed breaks for reasons *completely unrelated to* the policies Plaintiffs identify.  England does not dispute that drivers may occasionally miss breaks and cannot discount the possibility that some drivers may have missed some breaks due to tight scheduling.  But driver logs say nothing about *why breaks were missed* (or why they were shortened or delayed, which Plaintiffs assert are violations).  Therefore, the only way to know (1) whether any class member missed breaks, and (2) whether this was (a) a matter of personal choice (like Santiago's personal desire to maximize his driving time and income or Cook's desire to finish work early, in which case there is no violation), (b) because of an England policy (in which case there could be a violation), or (c) because of some other reason (in which case there may *or may not* be a violation) is to *ask each class member*.  Again, the need to conduct class-member by class-member mini-trials on these critical issues precludes certification.[6]  An ever-growing number of

---

[6] In addition to ignoring these evidentiary variations, the Renewed Motion glosses over the lack of typicality between the different categories of drivers and the drivers within each category.  Specifically, there are fundamental and relevant differences between the different categories of drivers potentially within Plaintiffs' proposed Meal and Rest Break classes and the differences in experience between drivers within each category.  Although the break practices of Coke Local drivers will be different from those of OTR drivers (Coke local drivers frequently take breaks at customer locations between loads or during the loading and unloading process while over the road drivers often stop at truck stops), Plaintiffs make no effort to demonstrate how their experiences have any relationship to the experiences of other California resident England drivers.  The differences between the duties of these various types of drivers directly impacts the claims Plaintiffs advance.  For example, unlike Jasper who testified that all of his trips were local and frequently only involved "driving around the corner," *Jasper Dep.* at 66, One-Way drivers are on the road for weeks at a time.  *See, e.g., Fraley Decl.* ¶ 3.  Jasper acknowledged that there is no way One-Way drivers were missing their rest break and that he was not contending otherwise in his suit.  *Jasper Dep.* at 146.  Of course, Jasper and Cook both testified that they had no reason or basis to know whether any other driver ever missed a meal or rest break, and, if so, whether the reason he or she might have missed it was the same as their reasons for missing meal and rest breaks.  *Id.* at 42-43, 111-112, 145-150; *Cook Dep.* at 194:24-195:16, 206:11-207:9.  Plaintiffs' failure to show that they are typical of all drivers

courts have denied certification for the same reasons. *See*, *e.g.*, *Flores v. Lamps Plus, Inc.*, No. B220954, slip op. at 17-19 (Cal. Ct. App. May 10, 2011), attached as *Ex. EE*; *Brown,* 249 F.R.D. at 587-88 (denying certification of driver meal and rest period claims virtually identical to those asserted in this case based on the predominance of individual issues); *Kenny*, 252 F.R.D. at 645 (denying certification on meal periods claim); *Garcia v. Sun Pacific Farming Cooperative,* 2008 WL 2073979, *12 (E.D. Cal. May 14, 2008) ("due to the conflicting evidence on . . . wage and hour violation . . . the plaintiffs have not shown commonality"); *Blackwell v. Skywest Airlines, Inc.,* 245 F.R.D. 453, 467-68 (S.D. Cal. 2007); *Lanzarone v. Guardsmark Holdings, Inc.*, 2006 WL 4393465 (C.D. Cal. Sep. 7, 2006) at * 4-5 (C.D. Cal. 2006); *see also* the numerous cases cited in this Court's March 30, 2009 Order, 2009 WL 873360, * 5. This Court should do the same.

Plaintiffs may argue that the need to conduct mini-trials on the issues of whether class members missed breaks, and if so, why, only relate to class damages, and that a class should therefore be certified. This is wrong. First, these are core issues of liability, as Plaintiffs themselves recognize. *See Renewed Memorandum* at 10 ("Plaintiffs' *theory of liability* is that" England's policies "effectively prevent[] drivers from taking meal breaks.) (emphasis added). In any event, class actions are inappropriate under Rule 23(b)(3) where the plaintiffs' claims require mini-trials to resolve individualized issues with respect to liability *or* damages. *See Bryant v. Service Corp. Intern.*, 2011 WL 855815, at *13 (N.D. Cal. March 9, 2011) (concluding plaintiffs had not satisfied Rule 23(b)(3) because "any jury trial of this matter would devolve into an endless series of mini-trials, with respect to liability as well as damages."); *Helm v. Alderwoods Group Inc.*, 2011 WL 855810, at *7 (N.D. Cal. March 9, 2011) (same); *Friend v. Hertz Corp.*, 2011 WL 750741, at *5-6 (N.D.

(i.e., OTR, local OTR, dedicated line haul, dedicated local, and intermodal) in the proposed class precludes certification. *See Stout v. Byrider,* 228 F.3d 709, 717 (6th Cir. 2000) (as go the representative's claims, "so go the claims of the class."); *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993).

Cal. Feb. 24, 2011) (denying motion for class certification under Rule 23(b)(3) because claims required "mini-trials with respect to each [class member's] actual work performance."); *Poulos v. Caesars World, Inc.*, 2002 WL 1991180, at *12 (D. Nev. June 25, 2002) (noting class action inappropriate where "a multitude of mini[-]trials will be required to resolve such issues as reliance and damages.").

**5.    Plaintiffs' rest break claims cannot be certified.**

Plaintiffs offer no separate argument in favor of certification of their rest break claims. They simply assert, without explanation, that those claims should be certified for the same reason as their meal break claims, apparently relying exclusively on the driver logs as their common evidence. Certification of their rest break claims must be denied for the same reasons applicable to their meal break claims. Moreover, the same analysis does not apply because rest breaks are critically different than meal breaks in that rest breaks are taken on duty and are therefore paid, while meal periods are taken when an employee is relieved of duty and are not paid.[7] Drivers would not be required to log them, and the absence of log entries showing rest breaks therefore means nothing. Plaintiffs' purported expert tacitly acknowledges the shortfall by not performing any purported rest break "statistical analysis" of the logs. Because logs are simply irrelevant to their rest break claims, Plaintiffs have provided no common evidence to support their request for certification of their rest break claims, and their request should be denied.

**6.    Plaintiffs' purported "statistical analysis" of driver logs does not alter the fact that their break claims are not suitable for certification under Rule 23(b)(3).**

---

[7] *Compare* Cal. Industrial Welfare Commission Transportation Wage Order No. 9-2001 § 11(c) ("Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked.") with § 12(a) ("Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.").

Plaintiffs claim that they have performed a "statistical analysis" of driver logs that shows a "class-wide violation rate of around 95%." *See Renewed Motion* at 20. This "analysis" does not support certification. *See Crandall Report*, §§ III-VI, ¶¶ 4-22. First, Plaintiffs attempt to pass off this "analysis" as expert evidence, but they offer it through one of their counsel, who has not been qualified as an expert and who cannot introduce such evidence on behalf of Plaintiffs. Plaintiffs have provided no basis to demonstrate that their counsel is a qualified expert under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).[8] The "analysis" should be rejected for the reasons set out in England's contemporaneous objection and in the Crandall Report.

Moreover, the "analysis" could not support certification if it had been proffered by a qualified third party expert[9] because it does not amount to reliable scientific evidence. Among other things, it fails to account for the facts that (1) drivers frequently elected not to log their breaks, rendering the logs useless as a source of evidence of missed breaks, and (2) because some drivers missed breaks for reasons unrelated to any England policies. Thus, even if every class member had logged every break he or she ever took, and if logs were accordingly accurate and valid evidence showing whether breaks were taken on a given day, the logs still say nothing about *why* breaks were not taken. The Court would accordingly *still* have to hear testimony

---

[8] When an expert's report or testimony is critical to the decision on class certification, a district court must perform a full *Daubert* analysis before certifying the class. *See Am. Honda Motor Company, Inc. v. Allen,* 600 F.3d 813, 815 (7th Cir. 2010). Such an analysis is impossible based on the expert report of Brain Van Vleck ("Van Vleck"). England is in the process of serving a subpoena for documents and testimony on Van Vleck and reserves its right to file a formal *Daubert* challenge to Van Vleck's testimony, should it be necessary to do so.

[9] Any proposal to certify the class on the representation that an expert could be retained later must be rejected. *See Dunbar v. Albertson's, Inc.* (2006) 141 Cal.App.4th 1422, 1432 ("It is not sufficient … simply to mention a procedural tool; the party seeking class certification must explain how the procedure will effectively manage the issues in question.").

from each individual class member as to *why* class members missed the breaks.  The logs, with or without "expert" analysis, cannot supply this critical proof necessary to evaluate liability on this claim.  *See Crandall Report*, §§ III-IV, ¶¶ 4-22.

Allowing Plaintiffs to bypass this critical inquiry through the submission of their "statistical analysis" would only serve to deprive England of its due process rights to cross examine drivers about whether they missed breaks and, if so, why. Courts refuse to allow class representatives to use surveys, samples, statistics, and representative evidence to prove liability on the claims of absent class members under circumstances like these. For example, in *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 291 (C.D. Cal. 2006), the court refused to allow the class representative to use "surveying and representative testimony" to determine "the amount of time spent on tasks" because the time spent by each employee on relevant tasks could differ. 238 F.R.D. at 253. Allowing certification would have improperly deprived the defendant of its right to cross-examine claimants. 238 F.R.D. at 253.[10] The same is true here. The only way to preserve England's due process right to defend against liability on Plaintiff's meal break claims is to allow England to cross examine individual drivers about whether they missed breaks and, if so, why.

### 7. Individualized questions about the number of hours drivers worked in California also preclude certification of Plaintiffs' break claims.

Under California law, employees are entitled to off-duty 30-minute meal breaks every five hours and 10-minute rest periods every four hours. Cal. Lab. Code §

---

[10] *See also Forrand v. Federal Express Corp.*, 2009 WL 648966 (C.D. Cal. Feb. 18, 2009), *aff'd in part, reversed in part, and stayed*, 2010 WL 4269401 (9th Cir. Oct. 26, 2010) at *4 (declining to certify wage payment claims on the basis of a statistical analysis that failed to account for variations among individuals related to the timing of work that required "an individualized inquiry for each potential class member."); *Evans v. Lasco Bathware, Inc.*, 178 Cal.App.4th 1417, 1430 (2009) (same).

512(a); Wage Order No. 9, §§ 11, 12.  As the Central District recently held in *Sarviss v. General Dynamics Information Technology, Inc.*, 663 F.Supp.3d 883 (C.D. Cal. 2009), however, the California Supreme Court's presumption against extraterritorial application of California law precludes any claim for a California Labor Code violation occurring outside the state.  It is true that the California Division of Labor Standards Enforcement ("DLSE") has opined that "IWC Orders presumptively cover individuals who are domiciled in California but who work partly or, under some circumstances, even principally, outside the state."  DLSE Enforcement Manual § 43.6.11 (citing *Tidewater Marine Western, Inc. v. Bradshaw*, 927 P.2d 296 (Cal. 1996), and cited in Chen, Wiseman, Cal. Practice Guide: Empl. Litig section 11:139).  The DLSE Enforcement Manual is not binding authority.  *See Murphy v. Kenneth Cole, Inc.*, 155 P.3d 284, 291 n.7 (Cal. 2007).

Moreover, *Sarviss* noted that the *Tidewater* decision relied on explicit statutory language expressing an intent to apply California's workers' compensation law outside the state's territorial boundaries in comparison to Labor Code provisions evidencing *no such intent*.  *See Sarviss*, 663 F.Supp.3d at 898.  *Tidewater* decided only that an employee residing in California, receiving pay in California, and working exclusively or principally in California is a "wage earner of California" who "presumptively enjoys the protection of IWC regulations," and thus  offered no opinion on the potential extraterritorial application of California Labor Code provisions to employment outside the state.  *Id.* at 899 (citing *Tidewater*, 927 P.2d at 309).  *Sarviss* thus decided the presumption against extraterritorial application of California wage and hour laws had not been overcome and ruled that, notwithstanding the plaintiff's California residency, neither California's meal and rest break rules nor its overtime laws applied to his out-of-state work.

As further support for its ruling, *Sarviss* observed that, since Tidewater, the California legislature has stood silent on the issue of whether or in what circumstances

IWC wage orders apply extraterritorially (citing as persuasive the unpublished ruling in *Guy v. Iasco*, 2004 WL 1354300 (Cal. App. 2004)) and that two recent federal court rulings "have tended to find that California wage and hour provisions do not apply to non-resident Californians who work primarily outside of California." *Id.* at 899-900 (citing *Priyanto v. M/S Amsterdam*, 2009 WL 175739 (C.D. Cal. 2009) (California wage and hour laws did not apply to non-residents working outside the state) and *Tidenberg v. Bidz.com, Inc.*, 2009 WL 605249 (C.D. Cal. 2009) (the UCL did not apply to non-resident plaintiff for conduct not alleged to have occurred in California)). The *Sarviss* court's persuasive decision supports the same result here.

While some of England's California resident drivers never leave the state, most regularly work outside of California. Some of these leave the state only to return weeks later. Others travel to a neighboring state and return the same day. In all such cases, however, the time spent in California may be less than three and one-half hours, or less than six hours, depending on the circumstances surrounding a particular trip, including the route taken and weather and traffic conditions. For example, Fine testified that he spent between three and four hours in California on days he drove to Nevada. *See Fine Dep.* at 97:14-98:23. Similarly, Santiago testified that as a long haul driver, he only worked in California for one-half of a day out of the six week period spent out of state. *See Santiago Dep.* at 87:1-13. While the total number of hours drivers work during a given day may be ascertained from drivers' logs to the extent they exist (logs for many drivers during the class period are no longer available), the logs do not show the number of hours worked in California or any other state, and nothing in the California Labor Code requires employers to record the number of hours worked by employees in any particular state. There is no way of knowing precisely when drivers left or entered the state on their way to or from destinations around the country, and thus no way of knowing whether any right to a meal or rest break existed (at least with respect to trips crossing the California state line) *without questioning each driver* about when during the course of a driver's duty

cycle the driver left or entered the state.   These kinds of individualized inquiries preclude certification of Plaintiffs' break claims.[11]

## B.   The Court Should Not Certify A Rule 23(b)(2) Class

Plaintiffs again ask the Court to certify their claims under Rule 23(b)(2), but offer no explanation for why this case qualifies under the applicable standard.  *See Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 617 (9th Cir. 2010).  In *Dukes*, the 9th Circuit affirmed that "Rule 23(b)(2) is not appropriate for all classes and 'does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.'"   *Id.* at 615 (quoting Fed.R.Civ.P. 23(b)(2) advisory committee's note to 1966 amends., 39 F.R.D. at 69, 102).  A Rule 23(b)(2) class must seek only monetary damages that are not "superior [ in] strength, influence, or authority" to the injunctive and declaratory relief sought. *Id.* at 616.  "To determine whether monetary relief predominates, a district court should consider, on a case-by-case basis, the objective 'effect of the relief sought' on the litigation." *Id.* (citation omitted).

The primary relief available in connection with Plaintiffs' claims under the California Labor Code is monetary in nature.   *See Second Amended Complaint*, ¶¶ 66 (meal break claims); 76 (rest break claims);  85 (reserve account claims); 91 (driver legal plan claims).  Rule 23(b)(2) certification is therefore inappropriate. *See Campion v. Old Republic Home Protection Co.*, 2011 WL 42759, *19 (S.D. Cal. Jan. 6, 2011) (Rule 23(b)(2) certification denied in part because "Plaintiff's claims are predicated on monetary restitution" and "monetary relief sought would determine many of the key procedures used in trying this case.").  Plaintiffs' request for injunctive relief

---

[11] For the same reasons, Plaintiffs break classes are not ascertainable.  Those classes are defined to include all current and former drivers who worked either "more than six hours within California during any day" or "more than three and on-half hours within California during any day" during the class period.  *Renewed Motion* at 1.  These classes are not ascertainable because membership cannot be determined on an objective basis as the logs do not show the hours worked in any particular state.

appears to be only an afterthought.  This cuts against Rule 23(b)(2) certification.  *See In re Paxil Litigation*, 218 F.R.D. 242, 248 (C.D. Cal. 2003) (denying Rule 23(b)(2) certification where it was "not entirely clear" what injunctive relief was sought).

Moreover, only a small fraction of the more than 1,000 putative class members were employed by England at the time Plaintiffs filed their First Motion two years ago.  *Freimuth Decl.*, ¶¶ 3-5.  This means that, for most putative class members today only monetary relief would be available.  *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (former employees lack standing to seek injunctive relief).  Rule 23(b)(2) certification is therefore inappropriate.  *See Regan v. Qwest Communications Int'l, Inc.*, 2010 WL 3941471, *6 (E.D. Cal. Oct. 5, 2010)

### C.    Plaintiffs Lack Standing To Assert Reserve Account Claims

Plaintiffs also ask the Court to certify a "Driver Legal Plan Class" and a "Reserve Account Class" to recover amounts allegedly deducted to pay for the defense of traffic ticket and to fund a driver reserve account, respectively.  England disputes Plaintiffs' Driver Legal Plan claim, but concedes that it is a legal issue that can be decided on a class-wide basis.  The Reserve Account Class, however, cannot be certified because Plaintiffs have suffered no harm.  *See Jasper Dep.* at 96, 154; *Cook Dep.* at 158, 162:15-17, 177:6-16.  During part of the class period, England maintained an escrow fund for new employees by deducting $20 per week for 14 weeks.  *Declaration of Annette Black* ("Black Decl."), ¶ 2, attached as *Ex. EE*; *Freimuth Dep.* at 107.  When England discontinued the reserve account in 2009, it returned these amounts to all drivers who had funds in those accounts, with interest.  *Black Decl.*, ¶ 3. Plaintiffs were refunded all reserve account deductions, with interest.  Accordingly, they lack standing to assert these claims and to represent putative class members with respect to these claims.  *See Warth v. Seldin*, 422 U.S. 490, 502, (1975).

## IV.   **CONCLUSION**

Plaintiffs' Renewed Motion should therefore be denied.

Dated: May 12, 2011                    Respectfully submitted,


                                       */s/ James H. Hanson*
                                       James H. Hanson

                                       Attorney for Defendant,
                                       C.R. England, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically this 12th day of May, 2011.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system: Anthony J. Zaller, Van Vleck, Turner & Zaller, LLP, azaller@vtzlaw.com; and Brian F. Van Vleck, Van Vleck, Turner & Zaller, LLP, bvanvleck@vtzlaw.com.   Parties may access this filing through the Court's system.


                                       */s/ James H. Hanson*
                                       James H. Hanson